## LEAMAN et al. v. DISTRICT OF COLUMBIA.
### No. 5487.

Court of Appeals of the District of Columbia.
Argued Dec. 7, 8, 1931.
Decided Jan. 18, 1932.

John W. Guider and Arthur J. Phelan, both of Washington, D. C., for plaintiffs in error.

William W. Bride and Edward W. Thomas, both of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This case involves the interpretation of an Act of Congress approved February 27, 1925 (43 Stat. 1004, c. 358, D. C. Code 1929, T. 20, § 1251 et seq.), entitled "An Act to regulate within the District of Columbia the sale of milk, cream, and ice cream, and for other purposes."

Section 2 of the act (section 1252, T. 20, D. C. Code 1929) provides that "No person shall keep or maintain a dairy or dairy farm within the District of Columbia, or produce for sale any milk or cream therein, or bring or send into said District for sale, any milk, cream, or ice cream without a permit so to do from the health officer of said District, and then only in accordance with the terms of said permit."

The question for decision is whether "Pantry Table Cream" and "Pantry Whipping Cream" may be brought into the District and sold without first applying for and obtaining the permit required in section 2 of the act.

Plaintiffs in error admit they brought into the District and offered for sale there without a permit the two articles in cans with the trade designations "Pantry Whipping Cream" and "Pantry Table Cream," and on this writ of error they contend that "Pantry Cream" is not cream within the meaning of that word as used in the act. In order to determine the question, we have considered not only the evidence admitted in the court below, but that tendered and rejected, for we think all of it was relevant and material and helpful in reaching a correct conclusion. This evidence shows that "Pantry Cream"

is sterilized cream sold in hermetically sealed cans; that the cream is obtained from approximately eight hundred farms within a radius of ten miles of Mason, Mich.; that the cows on these farms are all tuberculine tested; and that the cream is inspected by the boards of health of the city of Chicago and the city of Cleveland; that, after being so inspected, it is chilled and brought to the plant, and, with no addition of any preservative or foreign substance, it is warmed and the cream separated and placed in cans and hermetically sealed; that it is then sterilized by raising the temperature in the cans to 220 degrees Fahrenheit; and that the equipment used in the process is the same as that used in the production of evaporated milk. After the sterilization, the taste, it is claimed, is different from that of fresh cream and more nearly similar to the taste of evaporated milk. The evidence likewise shows that "condensed milk" and "evaporated milk" had been sold in the District of Columbia without a permit both before and since the passage of the act of 1925, and that "Pantry Cream" is sold in other cities with nearly identical milk laws, and that its sale has not been prohibited in any city of the United States. The company's label had been approved under the Pure Food and Drugs Act, and the word "sterilized" shown on the label is intended to and does acquaint the public with the fact that the product is sterile and keeps indefinitely.

The act of Congress to which we have referred (section 13 of the act, D. C. Code 1929, T. 20, § 1263) defines milk and cream as follows: "For the purpose and within the meaning of this Act 'milk' shall be held to be the lacteal secretion obtained from the complete milking of cows. 'Cream' is that portion of the milk rich in fat which rises to the surface of the milk on standing or is separated from it by centrifugal force or otherwise, and shall contain not less than 20 per centum of butter fat."

The lower court was of opinion that the act had been violated because a literal interpretation would bring the product of plaintiffs in error within its terms, and it must be conceded, indeed is conceded, that in this latter respect the court was correct, for the evidence all shows that the product is cream in all respects as that term is defined in the act. But plaintiffs in error insist that Congress did not intend that the act should be so construed as to make it applicable to cream which had been sterilized and placed in cans hermetically sealed; in other words, that the process of sterilization plus the canning met all the objects of the statute, and that therefore this new method, not in existence when the act was passed, should not now be considered as within its terms.

It is, of course, the settled law that a thing may be within the letter of a statute but not within the statute because not within its spirit. Holy Trinity Church v. U. S., 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226. In that case Mr. Justice Brewer declared it the duty of the courts to hold a thing complained of not within the statute wherever the Legislature had used language so broad as to reach acts or cases which experience and history show could not have been intentionally legislated against. But we cannot say that a construction of the act favorable to the prosecution in this case would violate any universal principle of conduct or history, and, if the act is to be here held inapplicable, it must be that a consideration of all its provisions shows that Congress clearly did not intend to include an article like that in question within its terms.

We have therefore given careful and patient consideration to the terms of the act itself. It is lengthy and was doubtless intended to cover the whole subject and also to embrace the best features of the state laws in effect at its passage. Its purpose unquestionably was to prevent, through a careful regulation of production conditions, the sale in the District of impure milk and cream. The moving consideration in the passage of the act was to safeguard the public health, and it is of course within the power of Congress, in the exercise of its police powers in the District, to say how this shall be accomplished. The act starts with a prohibition in requiring that "None but pure, clean, and wholesome milk, cream, or ice cream conforming to the definitions hereinafter specified shall be produced in or shipped into the District of Columbia," and, to the end that this prohibition may be effective, requires a permit from the health officer of the District as a condition precedent to delivery and sale. It fixes certain standards of dairy requirements, permits interstate shipments of milk or cream when produced in accordance with specifications of an authorized medical milk commission or state board of health, prohibits the employment of persons with communicable diseases, and secures the purification of the dairy water supply, and covers other similar precautionary measures, indicating, we think, that Con-

gress had primarily in mind provisions guarding the source of supply against contamination. Section 13 of the act defines the different classes of milk, cream, and ice cream, and section 10 of the act (D. C. Code 1929, T. 20, § 1260) provides for indicative labels for "skim milk," "reconstructed milk," and "reconstructed cream," and, as we have already pointed out, the product here in question is neither skim milk, reconstructed milk, nor reconstructed cream. On the contrary, the boast of plaintiffs in error is that it is pure cream—pure because by sterilization all impurities are destroyed, and cream because it is that portion of the milk to which nothing is added and from which nothing is taken that rises to the surface, or is otherwise separated, and contains the requisite per centum of butter fat. In its sterilized cans it is still cream, and it is not claimed, and will not be, that anything in the processing has changed its nature or its form. It is therefore the precise thing which Congress has said may not be brought into the District or sold there without a permit. To hold differently would be to say that, because the process adopted accomplishes the ends which Congress had in view, the unmistakable language of the statute and its requirements must be ignored. This we may not do, for, if the plain words of the statute leave no room for construction, the courts have no choice but to follow it without regard to the consequences. Commissioner of Immigration of Port of New York v. Gottlieb, 265 U. S. 310, 313, 44 S. Ct. 528, 68 L. Ed. 1031. In the last-named case the Supreme Court felt obliged to apply the rule just stated in a case of distressing hardship. The present case presents no such element, for it is not suggested here that a permit such as the statute requires has been refused, and, if the product is, as now appears, pure and healthful within the scope and purpose of the act, it is idle to suppose that the health officer will refuse a permit when one is asked.

It cannot, therefore, be claimed that the act, as we construe it, is unreasonable, oppressive or absurd. The intent as we have already said is to protect the public health, and the object is to secure this by control and supervision. If the product, by sterilization and sealing, meets the requirements of the statute, and this is claimed, there is, of course no reason to suppose it will be denied access to the markets of the District. If it does not, then to open those markets to its sale without let or hindrance, because of the adoption of a trade-name by which the

product may be distinguished from other cream, would simply invite demoralization and render the law abortive.

Affirmed.