**AERATED PRODUCTS CO. OF PHILA-DELPHIA, PA. v. DEPARTMENT OF HEALTH OF NEW JERSEY et al.**

**No. 9028.**

Circuit Court of Appeals, Third Circuit.

Argued Feb. 7, 1946.

Reargued Jan. 21, 1947.

Decided Feb. 14, 1947.

Charles S. Barrett, Jr., of Newark, N. J. (Lum, Fairlie & Wachenfeld, of Newark, N. J., Crawford S. Reilley, of Detroit, Mich., on the brief), for appellant.

Joseph A. Murphy, Trenton, N. J. (Walter D. Van Riper, Atty. Gen., of N. J., on the brief), for appellees.

Before BIGGS, MARIS, GOODRICH, McLAUGHLIN, O'CONNELL and KALODNER, Circuit Judges.

O'CONNELL, Circuit Judge.

The Aerated Products Company of Philadelphia, Pennsylvania (hereinafter called "plaintiff"), a Pennsylvania corporation, operates in Philadelphia a plant which manufactures a patented product called Instantwhip.[1] Packed in a small metal container, Instantwhip is used widely, throughout the United States, as a topping for sundaes, desserts, and the like.

Among plaintiff's customers was the Aerated Products Company of Newark (hereinafter called "Newark-Aerated"), an independent corporation which purchased plaintiff's product and resold it in smaller quantities to restaurants and soda fountains in New Jersey, from August, 1940, until April 1941.

Several local New Jersey boards of health, early in 1941, raised the question whether Instantwhip could be dispensed in their areas without meeting the requirements of Title 24, Chapter 10, of the Revised Statutes of New Jersey of 1937, N. J.S.A.[2] Plaintiff thereupon made application for a permit. Representatives of defendant Department of Health of the State of New Jersey (hereinafter called "Department") inspected plaintiff's plant, as a result of which it was ascertained that a certain dairy from which plaintiff received milk and cream had not been approved by the Department.[3] Consequently, on April 9, 1941, defendant J. Lynn Mahaffey (hereinafter called "Mahaffey"), Director of Health of the State of New Jersey, wrote plaintiff a letter in which he rejected plaintiff's application for a permit to distribute

---

[1] The ingredients of the product are butterfat, cream or milk, sugar, and vanilla. Harmless nitrous oxide gas is forced through this mix to puff it into the shape generally associated with whipped cream.

[2] This chapter regulates the distribution and sale of milk products within New Jersey. Pertinent portions of the statute are:

"24:10-1. Milk products. j. Milk products is defined as cream, ice cream, ice cream mix, sherbets, cream cheese, or other food for human consumption made from milk or cream, or both.

 *　*　*　*　*　*

"24:10-2. Permits; expiration. No person shall distribute, sell or hold for sale or manufacture into milk products, any milk or cream which has been collected or assembled from a dairy or dairies into any creamery, milk plant or other establishment in which milk or cream are handled, processed or stored or manufactured into milk products or from which milk, cream or milk products are shipped, transported or imported for the purpose of distribution, sale or resale * * * within this state, unless the person engaged in collecting or assembling such milk or cream shall have first obtained a permit from the state department to engage in such business, in the manner hereinafter set forth.

 *　*　*　*　*　*

"24:10-6. Facts to be ascertained before permit issued. The state department, before it issues any permit under the provisions of this article, shall be satisfied of the following facts:

"a. That the milk, cream and milk products are of the standard and quality required by and

"b. Are produced, handled, processed and transported in accordance with the rules and regulations established by the state department as well as the statutes of this state, with relation thereto.

"c. Unapproved milk, cream or milk products shall not be allowed to enter a milk plant from which milk, cream or milk products are distributed, sold or held for sale in this state.

 *　*　*　*　*　*

"24:10-14. Sale or distribution of milk or cream not complying with minimum requirements prohibited. Any milk or cream which fails to meet the minimum requirements set forth in sections 24:10-15 and 24:10-16 of this title shall not be sold, offered or exposed for sale, distributed or held in possession with intent to sell or distribute or for manufacturing into food for human consumption."

[3] The dairy had been approved, however, by the appropriate Pennsylvania and Philadelphia health authorities. That plaintiff's product is pure and wholesome is not contested.

under the statute.[4] Six days later, Mahaffey, in a letter to Newark-Aerated, withheld approval of its application for a permit for the same reason, and added the following remark: "* * * furthermore, you are advised to immediately discontinue the distribution of milk products in this State, which said products are obtained from or prepared for distribution in any milk plant or creamery which fails to meet the requirements of the statute aforementioned."

Conversations between plaintiff and a representative of the Department, both before and after the letters quoted above, revealed that plaintiff would be granted a permit only if all the milk and cream used in plaintiff's plant came from sources approved by the Department.[5] Plaintiff thereupon brought this suit, seeking an injunction to prevent the Department and Mahaffey from interfering with the sale of Instantwhip in New Jersey and from enforcing the statute, which was alleged to be in violation of the Constitution of the United States.

At the conclusion of the testimony in the court below, the district judge granted a motion to dismiss as to the Department, on the ground that the Department is the State, which the Eleventh Amendment renders immune to suit; and entered judgment for Mahaffey on the merits, finding that he had neither taken nor threatened action giving plaintiff a cause for complaint. The court took the view that the permit negotiations between plaintiff and the representatives of Mahaffey were of no legal effect, because "the statute specifically limits its operation to the production, distribution and sale of milk, cream and milk products within the State of New Jersey," and "the provisions of this statute do not apply to nonresidents of New Jersey." D.C.1945, 59 F.Supp. 652, 657.[6]

█ The Eleventh Amendment of the Federal Constitution denies to federal courts the jurisdiction over suits against a State by citizens of another State. The Department is a part of the executive branch of the New Jersey government. Revised Statutes of New Jersey of 1937, 26:-

---

[4] The text of this letter to plaintiff is as follows:

"State of New Jersey
Department of Health
Trenton
                              April 9, 1941.
The Aerated Products Co.,
1329 N. Randolph Street,
Philadelphia, Pennsylvania.
Attention: Mr. George Lamb, Secy.-Treas.
Gentlemen:
    A representative of this Department visited the creamery operated by you at the above address on April 7, 1941.
    The inspector's report shows that the cream handled in your plant was obtained from sources which have not been approved by this Department.
    Under these circumstances we are unable to approve your application dated April 3, 1941 for a permit to distribute milk products in this State under the provisions of Section 24:10-2, Revised Statutes of New Jersey, 1937.
    The State Treasurer will, therefore, be requested to return to you the sum of $25, which sum was received with your application aforementioned.
        Very truly yours,
                (s) J. Lynn Mahaffey,
                        W.S.
                J. Lynn Mahaffey, M.D.
IHS:EC          Director of Health."

[5] The Department had approved of other sources in Pennsylvania, but not of this source.

[6] The lower court also made the following finding of fact: "The plaintiff was advised by defendant J. Lynn Mahaffey, that it discontinue sending its product into the State." This statement also appears in the opinion, with the word "advised" italicized. The transcript of the trial testimony submitted to this court, however, indicates that Mahaffey himself dealt directly with the plaintiff only when he wrote the letter set forth in footnote 3, supra; and the opinion of the lower court includes the statement that "* * * the only evidence appearing in the case of any action on the part of this defendant [Mahaffey] directed towards this plaintiff is the following letter written by him: [text of letter quoted in footnote 3, supra]."

    Plaintiff did introduce testimony concerning the interviews with one of Mahaffey's assistants. One of the two witnesses testified that Instantwhip could not be *shipped*, the other witness that the assistant said Instantwhip could not be *sold*, unless cream approved by New Jersey was used.

2–1 et seq., N.J.S.A.; Board of Health v. Mundet Cork Corporation, 1939, 126 N.J. Eq. 100, 8 A.2d 105, affirmed 1940, 127 N. J.Eq. 61, 11 A.2d 260. Consequently, we agree with the court below that plaintiff's suit against the Department is prohibited by the Eleventh Amendment. Ford Co. v. Department of Treasury, 1945, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389.

■ As to Mahaffey, the rule is equally clear that his function as a public official brings him within the protection of the Eleventh Amendment only if the statutes authorizing his actions are constitutional, and if his actions do not exceed the authority granted him. Baldwin v. G. A. F. Seelig, 1935, 294 U.S. 511, 55 S.Ct. 497, 79 L. Ed. 1032, 101 A.L.R. 55. If the activities of Mahaffey are in violation of a right guaranteed by the federal Constitution, this court has jurisdiction to enjoin such violation.

Plaintiff's appeal, therefore, raises two questions which we have jurisdiction to decide: (1) Does New Jersey have the power to limit the distribution and sale in New Jersey of Instantwhip manufactured in Pennsylvania? (2) Is plaintiff entitled to an injunction preventing Mahaffey from interfering with shipments of Instantwhip into New Jersey?

■ As to the first question: The testimony reveals that all distributing and selling of Instantwhip in New Jersey is performed by Newark-Aerated. Newark-Aerated is not acting as an agent of plaintiff, and is not a party to this suit. Adjudication of this issue, therefore, would affect the rights of Newark-Aerated without giving it the opportunity to be heard. See Mallow v. Hinde, 1827, 25 U.S. 193, 198, 12 Wheat. 193, 198, 6 L.Ed. 599; quoted in Buss v. Prudential Ins. Co. of America, 8 Cir. 1942, 126 F.2d 960, 967. Consequently, we are not called upon to decide, and do not decide, what effect the statute and the activities of Mahaffey would have upon the rights of Newark-Aerated.

■ As to the second question: Our examination of the record in this case indicates that the district court did not abuse its discretion in finding that no action had been taken or threatened by Mahaffey which would jeopardize plaintiff's right to ship. Indeed, defendant concedes the right, and points out further that that right was exercised without hindrance for nine months, while the statute was in effect.[7]

At best, therefore, it would appear that an injunction is sought prematurely by plaintiff. "It is elementary that a court of equity will not grant an injunction to restrain one from doing what he is not attempting and does not intend to do." Blease v. Safety Transit Co., 4 Cir. 1931, 50 F.2d 852, 856.

Affirmed.

---

[7] Since no attempt has been made, or is contemplated, to apply the statute to shipments by plaintiff, the contention that Instantwhip is a "food product" and not a "milk product" becomes academic. It is sufficient to note that the definition of "milk products" in the statute (paragraph 24:10–1 j, set forth in footnote 2, supra), as conceded by plaintiff, is sufficiently broad to include Instantwhip. Such classification we deem to be neither capricious nor ill-advised. Cf. Leaman v. District of Columbia, 1932, 60 App.D.C. 395, 55 F.2d 1020.