**EMBASSY DAIRY, Inc.**

v.

**CAMALIER et al.**

No. 11701.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 11, 1953.

Decided Feb. 11, 1954.

Petition for Rehearing in Banc Denied
April 2, 1954.

Mr. Nicholas J. Chase, with whom Mr. Robert E. Lynch, Washington, D. C., was on the brief, for appellant.

Mr. Harry L. Walker, Assistant Corporation Counsel for the District of Columbia, with whom Messrs. Vernon E.

West, Corporation Counsel, Chester H. Gray, Principal Assistant Corporation Counsel, and Milton D. Korman, Assistant Corporation Counsel, were on the brief, for appellees. Mr. John H. Baumgartner, Jr., Assistant Corporation Counsel, Washington, D. C., entered an appearance for appellees.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

In its complaint seeking declaratory and injunctive relief, Embassy Dairy, appellant herein, asserted various grounds for challenging the manner and extent to which the Commissioners and Director of Health for the District of Columbia, appellees herein, applied the inspection and licensing requirements of the District of Columbia Milk Act of 1925.[1] The District Court granted a motion to dismiss because it thought Embassy had "no present standing enabling it to make this challenge." It also denied Embassy's motion for a preliminary injunction.

On this appeal Embassy requests that we reinstate the complaint and direct the District Court to issue a preliminary injunction. For reasons described in the margin below, only one of the grounds asserted for relief in the complaint provides a basis for our consideration of this request.[2] This ground is confined to a challenge of the statutory authority for an order of the Commissioners, effective November 30, 1952, requiring District of Columbia inspection and licensing under the Milk Act of non-District sources of milk brought into the District for processing, even though such milk is destined for sale to consumers outside the District.[3]

1. 43 Stat. 1004–1008 (1925), as amended, 33 D.C.Code §§ 301–319 (1951).

2. Embassy asserted two other grounds for relief.

The first was that non-District suppliers of milk were not required to obtain a District license for milk to be sold *within* the District provided the milk had been passed for inspection by the state of origin or the United States Public Health Service. This ground was abandoned on appeal. See Brief for Appellant, pp. 20, 26.

The second ground asserted was that the tests established for inspection and licensing by the District Health Department pursuant to the Milk Act were void as not being "reasonably related to the production of milk and cream for shipment into the District of Columbia." The trial court refused to entertain this ground for relief since there was no showing that either Embassy or its suppliers had sought and been denied a license by reason of the application of these tests. Without deciding whether Embassy could base its challenge of the tests upon a denial of a license to any of its suppliers, we think such a challenge is clearly premature under present circumstances and that the trial court properly refused to entertain it.

3. From passage of the Milk Act in 1925 until 1942, District inspection and licensing under the Act were required for all foreign sources of milk brought into the District for processing, regardless of whether such milk was destined for sale to consumers within or outside the District. With the advent of the war and a greatly increased population, however, the District was threatened with an inadequate milk supply. The Commissioners, therefore, issued an order in 1942 eliminating the requirement for District of Columbia inspection and licensing of foreign sources of milk processed in the District, regardless of whether such milk was destined for sale to consumers within or outside the District, provided, however, that the foreign sources had been inspected and approved by their own state health authorities. This order remained in effect until 1950 when it was replaced by the so-called "Dual Plan." Under this plan, the requirements for District inspection and licensing were applied only to foreign sources of milk processed within and sold to consumers within the District; milk destined for sale to consumers outside the District could be brought into the District for processing from foreign sources without District inspection and licensing, provided, however, that such sources were inspected and approved by their own state health authorities, and provided that the milk was processed and pasteurized in the District separately from the milk destined for sale to consumers within the District. The Dual Plan continued in effect until supplanted by the challenged order of November

■■ Because we think the allegations of the complaint underlying this challenge state a case for equitable relief which the District Court has jurisdiction to entertain, we hold that dismissal of the suit was error. These allegations, which we must accept as true for present purposes, disclose the following: that Embassy has substantial contracts for supplying milk to consumers outside the District of Columbia; that to fulfill these contracts it must bring raw milk into the District for processing since its plant, which represents a million dollar investment, is located here; that, until barred by the Commissioners' November 1952 order, Embassy was permitted to and did bring milk into the District for this purpose; that it protested unsuccessfully to the Commissioners that the bar thus imposed was in excess of their statutory authority; and that since there was no further administrative remedy it was faced either with the imminent and irreparable loss of a portion of its business or, alternatively, with the risk of criminal prosecution for violating the Commissioners' November 1952 order.[4] Thus, the complaint asserts, in effect, that there has been a legislative declaration of rights, that there is an inadequacy of administrative review, and that there is occasion to resort to equitable remedies. These are "the elements" said by the Supreme Court in Columbia Broadcasting System v. United States to be "prerequisite to judicial review."[5] Although that case was brought under a provision of the Federal Communications Act authorizing review of Commission orders by a three-judge court proceeding under the Urgent Deficiencies Act it was, nevertheless, a "plenary suit in equity."[6] ·And

in connection with our discussion of that case in United Gas Pipe Line Co. v. Federal Power Commission,[7] we said, "Where no provision has been made for a three-judge court, there is abundant authority that a similar suit, to enjoin the action of an administrative agency acting illegally and threatening irreparable injury, will lie in the district court." [Citing Utah Fuel Co. v. National Bituminous Coal Commission, 1939, 306 U.S. 56, 59–60, 59 S.Ct. 409, 83 L.Ed. 483; Shields v. Utah Idaho Central R. Co., 1938, 305 U.S. 177, 182, 184, 59 S.Ct. 160, 83 L.Ed. 111; Philadelphia Co. v. Stimson, 1912, 223 U.S. 605, 619–620, 32 S.Ct. 340, 56 L.Ed. 570; Carolina Aluminum Co. v. Federal Power Commission, 4 Cir., 1938, 97 F.2d 435, 438.]

■ As we mentioned earlier, on this appeal Embassy also asks us to direct issuance of the preliminary injunction, which the District Court denied, pending final determination on the merits. Whether or not a preliminary injunction should issue is ordinarily a matter for the discretion of the District Court to be exercised upon this series of estimates: "the relative importance of the rights asserted and the acts sought to be enjoined, the irreparable nature of the injury allegedly flowing from denial of preliminary relief, the probability of the ultimate success or failure of the suit, the balancing of damage and convenience generally."[8]

Since the complaint was dismissed for lack of jurisdiction, there was no need for the District Court to reach consideration of these estimates in denying the preliminary injunction. The court's opinion, however, contains some indication of a belief that the Act required District inspection and licensing for the

1952, referred to in the text above, which required District inspection and licensing for the foreign milk brought into the District for processing regardless of whether such milk is destined for sale to consumers within or outside the District.

4. 33 D.C.Code § 319 (1951).

5. 1942, 316 U.S. 407, 424–425, 62 S.Ct. 1194, 1204, 86 L.Ed. 1563.

6. 316 U.S. at page 415, 62 S.Ct. at page 1199.

7. 86 U.S.App.D.C. 314, 318, 181 F.2d 796, 800, certiorari denied, 1950, 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607.

8. Communist Party v. McGrath, D.C.1951, 96 F.Supp. 47, 48 (Concurring opinion).

foreign sources of milk involved in the issue we discuss. Such belief would presage resolution of the "probability of ultimate success" factor against Embassy. While we do not finally decide any issue dispositive of the suit at this preliminary stage, we think a resolution of that factor against Embassy, based solely upon the express terms of the Milk Act, is unwarranted. For example, we cannot agree with the Commissioners' main contention that § 18 requires their interpretation. That section provides:

"No person in the District of Columbia licensed under [the Milk Act] shall receive any milk or cream from any source until he shall have first ascertained from the health department that the person from whom such milk is obtained holds a license from the director of public health of said District to send milk or cream into the District of Columbia." [9]

Since this section covers only "person[s] in the District of Columbia *licensed* under" the Act, its reach is necessarily limited to those activities which require such licenses. These activities are defined in § 2, which provides in pertinent part that:

"No person shall keep or maintain a dairy or dairy farm within the District of Columbia, or produce *for*

*sale* any milk or cream *therein,* or bring or send into said District *for sale,* any milk, cream, or ice cream without a permit so to do from the director of public health of said District, and then only in accordance with the terms of said permit. * * * " [10]

Thus, the activities licensed and, therefore, subject to control under the Act, are limited to those involving the bringing or sending of milk into the District for sale therein. It follows that the prohibition of § 18 does not extend to the importation of milk which is sold outside the District. And this construction is consistent with the Act's stated purpose, "To regulate within the District of Columbia the sale of milk, cream, and ice cream, and for other purposes." [11]

To sustain the Commissioners' order under attack here, we think the District Court must find, in the further proceedings upon remand of this case, that the order is realistically necessary to effectuate the Act's purpose of protecting the health of District consumers.[12] It cannot be sustained upon a finding that there is "an available supply of locally inspected milk more than sufficient to meet the present and reasonably foreseeable requirements of the consumers in this area." [13]

9. 33 D.C.Code § 318 (1951).

10. 33 D.C.Code § 302 (1951). Emphasis supplied.

11. 43 Stat. 1004 (1925).

12. "The moving consideration in the passage of the act was to safeguard the public health * * *." Leaman v. District of Columbia, 1932, 60 App.D.C. 395, 396, 55 F.2d 1020, 1021. The debates prior to passage of the Milk Act also indicate the prime concern was the health of District of Columbia consumers. See, for example, such statements as that of Dr. W. C. Fowler, then Health Officer of the District "[I]ts enactment into law will, it is believed, secure for the citizens of this District a pure, clean and wholesome milk supply. It is a well-recognized fact that milk is the most important of all our food products, and its purity and whole-

someness is essential in safeguarding the public health, more especially the children and invalids who so largely depend upon it for their nourishment." 66 Cong. Rec. 3318 (1925)); of Representative Lampert ("Mr. Chairman, for several years many who have given most thought to the subject have believed that there should be regulations to insure and place beyond doubt the milk, cream, and dairy products generally which are disposed of and used in the District of Columbia." 66 Cong.Rec. 3317 (1925)); and of Senator Copeland ("It [the Milk Act] makes for the safety of this community, for the safety of the children and of everybody." 65 Cong.Rec. 9176 (1924)).

13. Affidavit of Dr. Arthur R. Buddington, Assistant Director, Bureau of Food Inspection of the District Health Department, dated November 24, 1952.

The probability of ultimate success or failure of the suit, however, is only one in the series of estimates required for determining whether a preliminary injunction should issue. The others are also of crucial importance. We do not find here the sort of unusual circumstances which warrants departure from the normal practice of allowing the District Court to make these estimates in the first instance.[14] Accordingly, Embassy must pursue its request for a preliminary injunction in the District Court upon the remand herein.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

14. See Yakus v. United States, 1944, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834; and Rice & Adams Corp. v. Lathrop, 1929, 278 U.S. 509, 514, 49 S.Ct. 220, 73 L.Ed. 480.