## FOWEL v. CONTINENTAL LIFE INS. CO.
### No. 554.

Municipal Court of Appeals for the District of Columbia.

Oct. 20, 1947.

Mark P. Friedlander, of Washington, D. C. (Leroy A. Brill, of Washington, D. C., on the brief), for appellant.

William H. MacDonald, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

206

CLAGETT, Associate Judge.

Appellee as landlord sued appellant as tenant for possession of a store in the Investment Building used by the tenant as a flower shop under a five-year lease which had expired. The trial court, sitting without a jury, gave judgment for the landlord and the tenant appeals.

The tenant defended the action upon two principal grounds: first, that at the time of obtaining the five-year written lease in 1942 he had been promised an option for a five-year extension of such lease and in reliance upon such promise had made large expenditures upon the premises; and, second, that the suit had not been authorized by the landlord. The tenant assigns as error the refusal of the trial court to find that he was entitled to the five-year extension of his lease; the finding that the suit had been authorized; the exclusion of testimony as to the reasons why the action was brought; the exclusion of a copy of the five-year lease which was in the tenant's possession; and, finally, the refusal by the trial court to permit cross-examination of two of the landlord's witnesses regarding the sobriety of the president of plaintiff corporation when testifying at the trial.

■ The lease was negotiated between the tenant and a representative of a real estate company, which, the evidence showed, had managed the office building for many years, but such lease was signed by the president of the owning corporation. The tenant testified that when the lease was negotiated he had sought a ten or twelve year lease but had been told by the representative of the real estate company that he could obtain only a five-year lease at that time but would be given an option to extend for an additional five years and that the lease as signed by him contained such option; also that when he discovered shortly before the expiration of the lease that the copy in his possession contained no reference to the option his wife had discussed the matter with the president of the insurance company and had been assured an extension would be given. His wife testified to the same effect as to the latter

point. The representative of the real estate company who had negotiated the lease denied he had ever promised a five-year extension, and the president of the insurance company also denied he had made such promise. The original lease, signed by the president of the owning corporation and the tenant himself, was received in evidence. It contained no reference to an extension or option to extend. The issue of fact as to whether there had been a promise of an extension was resolved against the tenant by the finding of the trial court and, of course, may not be disturbed on appeal.

■■ The tenant's contention that the action was not authorized by the insurance company is based upon the fact that although the complaint was filed in the name of that company it was signed by a vice president of the real estate company; also upon testimony by tenant's wife that the president of the insurance company had told her on several occasions that he approved of her husband as a tenant and hoped the real estate company would extend the lease. Conceding that the president of a corporation may authorize litigation in its behalf, the tenant urges that the president may not delegate such authority to another without prior approval of his board of directors and that such approval had not been given.

The principle invoked by the tenant, however, has no application to the facts of this case. D.C.Code 1940, § 11—735, applying to such actions, provides that the complaint may be verified by the plaintiff or "by his agent or attorney, having knowledge of the facts."[1] The president of the insurance company testified that he had personally authorized the filing of the action. The evidence was undisputed that the real estate company was the agent of the insurance company in the management of the building. Thus the only act performed by the agent was the signing of the complaint. While, in general, the president of a corporation may not, unless authorized, delegate to a subagent functions involving the exercise of discretion, it is fundamental that he may delegate the doing of mere

[1] See Wynn v. Washington, D.C.Mun.App., 53 A.2d 275.

ministerial acts.[2] The testimony showed that the Investment Building includes about 500 rooms, and it seems obvious that the president of the insurance company which owned the building could not be expected personally to pass upon what tenants were to occupy each of said rooms. Under the circumstances, therefore, there was ample evidence to support the trial court's conclusion that there was no unlawful delegation of authority to the real estate company.

This leaves for consideration the three rulings on the admissibility of evidence.

■ With respect to the exclusion of testimony as to the reasons for the seeking of possession by plaintiff, such evidence was obviously inadmissible. Under D.C.Code 1940, § 45—910, whenever a lease for any definite term shall expire and the tenant shall fail or refuse to surrender possession of the leased premises, the landlord may sue to recover possession of the premises. The landlord in such circumstances is not required to give reasons for thus seeking possession.

■ Respecting the tender in evidence of a copy of the lease in the possession of the tenant, the purpose of the tender, as stated in the tenant's brief, was "to show the careless manner in which the execution of the lease was conducted and how much the appellant relied upon the Rust Company (the real estate company involved) to give him what he had been promised." The tenant's testimony regarding the lease was that he had signed the original in duplicate but that both originals had been kept by the Rust Company and that he received a copy later, that he had placed the copy in his safe without examining it until about the time this action was brought when he discovered for the first time that it did not contain a five-year extension option, that he "supposed" the copy produced in court was the one he had received from the real estate company. He identified his signature on the original lease. The copy produced by defendant, containing typewritten signatures, is on a different form than the original but the contents of the two are identical. Neither contained an option for an extension. There is no claim except possibly by inference that the original had been altered after signature. We have concluded that even if the copy was admissible in evidence its exclusion obviously was harmless, because it would have proved little or nothing.

■■ The final error assigned has to do with the sustaining of objections by the trial court to questions by the tenant's counsel addressed to two of the landlord's witnesses regarding the condition of the president of the insurance company while testifying. The trial began in the afternoon of one day and the president testified on direct and cross-examination on that day. The trial was then recessed for about ten days, and the president of the landlord corporation then testified again in rebuttal. For the second time he was examined by his own counsel and on cross-examination. He was also asked several questions by the court. Following his testimony there was a short recess and after the recess two of the landlord's witnesses were called and examined in rebuttal. On cross-examination by tenant's counsel the first of these witnesses was asked whether he had seen the president of the landlord corporation "today." He was then asked whether he had noticed anything unusual about the president's condition and replied "Not in the least." He was then asked "Was his condition today the way he normally is?" and he answered "Yes." Then followed the question: "As to sobriety?" This question was immediately objected to by the landlord's counsel. The court sustained the objection stating that he had sat within two feet of the president while the latter was testifying and that there was no indication to the court that he appeared in an inebriated condition or under the influence of liquor and further that "If he had the court would have refused to permit him to testify." In answers to questions from

[2] Philip Carey Mfg. Co. v. Dean, 6 Cir., 58 F.2d 737, certiorari denied 287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541; Bijur Motor Lighting Co. v. Eclipse Mach. Co., D.C.W.D. N.Y., 237 F. 89, 95; 2 Fletcher, Cyclopedia Corporations (Perm. Ed.) § 503.

the court, counsel for the tenant said he wouldn't go so far as to say that the president had been legally under the influence of liquor or intoxicated or drunk when he testified but that he was prepared to offer testimony that he had been drinking heavily. When another witness for the landlord was undergoing cross-examination, the same kind of questions were asked by the tenant's counsel and objections were sustained by the court.

Even assuming that the witnesses had been permitted to answer the questions and that they had testified that the president of the insurance company "had been drinking heavily" at the time he testified, such evidence could not have affected his competency to testify but only his credibility.[3] Furthermore, the trial court had ample opportunity to observe the president's appearance, conduct on the witness stand and manner of answering questions and was entitled in his judicial discretion to determine whether further evidence on the subject should be received. Tenant's counsel had opportunity to cross-examine the president while the latter was on the stand and exercised that right fully, but he neither asked him any question about his condition nor requested that he be recalled. Under all of the circumstances, we conclude that the trial court did not abuse its discretion in sustaining the objections to the questions to the other witnesses.

No error appearing, the judgment of the trial court is

Affirmed.

---

[3] Cannady v. Lynch, 27 Minn. 435, 8 N.W. 164; Myers v. State, 37 Tex.Cr.R. 208, 39 S.W. 111; Anderson v. State, 30 Ala.App. 124, 2 So.2d 461, certiorari denied 241 Ala. 381, 2 So.2d 463.