**JOHN HANCOCK MUT. LIFE INS. CO. v. NATIONAL LABOR RELATIONS BOARD.**

No. 10863.

United States Court of Appeals District of Columbia Circuit.

Argued May 10, 1951.

Decided July 5, 1951.

John E. Powell, Washington, D. C., with whom Arthur P. Drury and John M. Lynham, Washington, D. C., were on the brief, for petitioner.

Dominick L. Manoli, Atty., National Labor Relations Board, Washington, D. C., with whom A. Norman Somers, Asst. Gen. Counsel, National Labor Relations Board, Washington, D. C., was on the brief, for respondent.

Before CLARK, PROCTOR and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Samuel Kohen was employed as an agent salesman in one of petitioner's New York district offices for seven years before he was promoted to the position of assistant district manager in November of 1944. It appears that during that 1937–44 period, his sales of ordinary insurance were satisfactory but his industrial insurance sales were not. In any event, his overall sales for a period of about eleven months immediately preceding his promotion were above the company average. In January of 1947, some two years after his promotion, Kohen began to organize a small union of assistant district managers in the New York area. He sought an American Federation of Labor charter for that union and eventually instituted and testified at Board proceedings in an effort to obtain its certification as exclusive bargaining representative. Those proceedings were dismissed by the Board on August 18, 1948, on the ground that assistant district managers are supervisors and, as such, not employees within the meaning of the Labor-Management Relations Act. About a month thereafter, petitioner raised the question of Kohen's poor production record as an assistant district manager and finally discharged him for "incompetency" in that position on February 12, 1949. Kohen then requested employment as an agent, pointing to the petitioner's consistent practice of affording the opportunity of employment as an agent to anyone relieved of the position of assistant district manager. Petitioner refused him such employment although there were several appropriate openings available.

Shortly after Kohen received notice of his discharge, he filed charges with the Board alleging that he had been discharged because of his testimony in the certification proceedings. Later, after the Company's director of agencies had finally refused him the opportunity of employment as an agent, Kohen amended his charges to include an allegation that the Company had discriminated against him by refusing to hire him in a non-supervisory capacity. The Board issued a complaint against the Company pursuant to §§ 8(a) (3) and (4), held hearings, and decided that the Company had committed an unfair labor practice within the meaning of § 8(a) (4) of the Labor-Management Relations Act.[1] With respect to the alleged violation of § 8(a) (3),[2] the Trial Examiner found that it was not supported by the record and recommended its dismissal. While the Board refused either to adopt the Trial Examiner's view of the matter or to make its own determination, it did dismiss the § 8(a) (3) charge, because " * * * the policies of the Act will as well be effectuated by a remedial order based upon a limited finding that the Respondent in this case [petitioner here] violated Section 8(a) (4) of the Act * * *."[3] Petitioner was ordered (1) to cease and desist from further violation of § 8(a) (4); (2) to offer immediate employment as an agent to the employee affected by the violation found; (3) to make reimbursement for loss of

---

1. 29 U.S.C.A. § 158(a) (4), quoted infra.

2. That section, 29 U.S.C.A. § 158(a) (3), provides that it shall be an unfair labor practice for an employer " * * * by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *."

3. Jt.App. p. 21.

any pay resulting from such violation; and (4) to post appropriate notices. The Company now seeks to set aside the Board order. The Board requests its enforcement.

Our consideration here is limited to § 8(a) (4) which provides that it shall be an unfair labor practice for an employer "* * * to discharge or *otherwise discriminate* against an employee because he has filed charges or given testimony under this subchapter.[4]" The Board found that petitioner had discriminated against Kohen by denying him the customary opportunity to be employed as an agent after he had been discharged from his supervisory position and that the basis for such discrimination was Kohen's testimony before the Board in connection with the certification proceeding. Petitioner challenges the Board's order on the ground that (1) Kohen was not an employee within the meaning of § 8(a) (4) when he applied for a position as agent; (2) denial of employment to an applicant is not a form of discrimination proscribed by § 8(a) (4).

■ Section 2(3) of the Act provides that the term "employee," as used in the statute, "shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise".[5] Thus, in the absence of specific limitation, it includes not only the existing employees of an employer but also, in a generic sense, members of the working class.[6] Since the subchapter in question here does not "explicitly state otherwise," it was proper for the Board to conclude that Kohen, as an applicant for employment as an agent, was an employee within the meaning of § 8(a) (4).

■ Petitioner asserts, however, that even if Kohen is held to be an employee within the meaning and protection of § 8 (a) (4), a refusal to grant employment is not one of the forms of discrimination proscribed by that section. It is said that "the word 'discharge' * * * gives color and meaning to the phrase which it introduces" and that "otherwise [discriminate] * * * refers to other and lesser forms of discrimination."[7] Such lesser forms of discrimination would, as our dissenting member points out, include threats to discharge, suspending an employee, or reducing his pay. It is also suggested that petitioner's view is supported by the fact that § 8(a) (3), in dealing with attempts "to encourage or discourage membership in any labor organization", expressly refers to discrimination "in regard to hire or tenure of employment or any term or condition of employment" while the next subsection, 8(a) (4), does not refer specifically to discrimination in hiring, which is involved here.

Petitioner can derive no support either from the language of § 8(a) (3) or from the differences between it and § 8(a) (4). The very lack of specificity in the latter provision points to a congressional intent to make it even more all-embracing than § 8(a) (3). Such breadth of statutory language is consistent only with an intention to prevent the Board's channels of information from being dried up by employer intimidation of prospective complainants and witnesses.[8] With such a purpose in mind, it is inconceivable that Congress would have restricted its condemnation only to certain "means" for accomplishing discriminations which would strike at the heart of Board processes. Indeed, Congress demonstrated it had no such narrow interest in mind by employing the broadest language it could find. The use of the words "or otherwise discriminate" in the disjunctive after "discharge" indi-

---

4. 29 U.S.C.A. § 158(a) (4) (Emphasis supplied.)

5. 29 U.S.C.A. § 152(3).

6. Cf. Phelps Dodge v. National Labor Relations Board, 1941, 313 U.S. 177, 191–192, 61 S.Ct. 845, 85 L.Ed. 1271.

7. Petitioner's Brief, p. 32.

8. The purpose of § 8(a) (4) was "to assure an effective administration of the Act by providing immunity to those who initiate or assist in proceedings under the Act." Briggs Mfg. Co., 75 NLRB 569, 570–571.

cates clearly that Congress sought to extend Board scrutiny to all forms of discrimination.

Under petitioner's view, the Act would permit denial of employment to an applicant such as Kohen on the ground that he had filed charges or given testimony before the Board. That would be not only to license the vicious practice of blacklisting but to thwart the administration of the Act itself by ignoring the ever present threat of such intimidation. Such a reading of the Act would be a perversion of legislative intent.

 Petitioner says that, in any event, the Board's finding that Kohen was refused employment as an agent for the reason that he had "filed charges or given testimony" in the certification proceedings is not supported by evidence in the record to the extent required by the terms of the Labor-Management Relations Act and the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. Viewing the record as a whole, there is substantial evidence to support this finding. And when thus supported, such findings may not be disturbed by our review.[9]

The Board's order is entirely consistent with the policy of § 8(a) (4). It is affirmed and will be enforced.

It is so ordered.

CLARK, Circuit Judge, concurring in part and dissenting in part. The petitioner has raised several questions before this court which have been discussed in the majority opinion. On most of these issues I am in complete accord with the majority, but in at least one essential respect my views are not in accord with those of the majority.

The petitioner first contends that the effect of the Board's order is to substitute its discretion for that of the company in the hiring of the petitioner's employees.

This the petitioner alleges is not the purpose of the Act as the United States Supreme Court said in N. L. R. B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, at page 45, 57 S.Ct. 615, 81 L.Ed. 893. If the Board's finding, that Kohen was not taken back because of his testimony in the representation proceeding, is supported by substantial evidence pursuant to Section 10(e) of the Act, the petitioner's position in this regard is untenable. The evidence before the Board was undoubtedly conflicting in regard to the *reasons* why the company would not hire Kohen as an agent after his dismissal as an assistant district manager. In view of the recent decision in the United States Supreme Court in Universal Camera Corp. v. N. L. R. B., 1951, 71 S.Ct. 456 at pages 465–466, we are not prepared to set the findings of the Board aside in regard to the *reasons* why Kohen was not hired. We "cannot conscientiously find that the evidence supporting that decision is [not] substantial, when viewed in the light that the record in its entirety furnishes * * *." I would accept, therefore, the Board's finding that the *reason* the company refused to employ Kohen as an agent was that he gave testimony under the Act. To this extent I concur with the majority opinion.

The company contended below that Kohen was not an "employee" within the meaning of Section 8(a)(4) and the Board found that Kohen was an "employee" within the Act. The company earnestly contends before this court that Kohen is not an employee, and I do not consider it essential to express an opinion on this point as it is not essential to this decision.

Section 8 specifies what Acts shall constitute an unfair labor practice for an employer. Section 8(a)(3) provides that it shall be an unfair labor practice for an employer—"by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or dis-

9. Section 10(e), 29 U.S.C.A. § 160(e), provides that "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." See discussion in Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 71 S. Ct. 456.

courage membership in any labor organization * * *."

The Board expressly found that Section 8(a)(3) had not been violated since the Union was not a labor organization within the meaning of the Act. Subsection (a) (3) is the only part of Section 8 which deals with the hiring of employees. This subsection declares that it is an unfair labor practice to encourage or discourage membership in a labor organization, not by just any means, but "by discrimination in regard to hire or tenure of employment * * * or condition of employment". Suffice it to say that under the subsection the encouraging or discouraging must be practiced by the means specified to constitute an unfair labor practice.

Section 8(a)(4) provides that it shall be an unfair labor practice for an employer— "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter."

This subsection makes it an unfair labor practice to discharge or otherwise discriminate against an employee for two specific reasons. The first reason is that the employee has filed charges under this subchapter and the second that the employee has given testimony under this subchapter. Obviously, as in subsection (a)(3) of Section 8, the unfair labor practice must be accomplished by the specified means.

The Board found that the company refused to hire Kohen because he gave testimony under this subchapter. To bring this alleged violation within the wording of Section 8(a)(4) the Board found it necessary to say that a refusal to hire is included in the term "otherwise discriminate."

This construction of Section 8(a)(4) which is urged by the Board I cannot adopt. If taken out of context the term "otherwise discriminate" can easily be construed as all inclusive. Any discrimination, however slight and in whatever regard, would suffice, but such an interpretation would nullify the effect of "to discharge." To discharge certainly would be discrimination when the latter word is given its broad general meaning. It would appear wholly illogical to attribute such a broad definition to the word discriminate here. On the one hand it destroys the effect of "to discharge". On the other it overlooks the fact that Congress expressly included both hiring and firing in the preceding subsection and did not do so in subsection (a) (4) of Section 8.

"To discharge" sets the tone of this provision and the meaning of the term "otherwise discriminate" must stand in relation to it. For example, the term "otherwise discriminate" I think should include threats to discharge in the event an employee has testified or filed charges under this subchapter. Similarly this term would include and prevent an employee from being suspended or having his pay reduced for having filed charges or given testimony under this subchapter.

What constitutes an unfair labor practice is limited by the terms of the Act. The Act does not state anywhere that a prospective employee may not be denied employment because he has filed charges or given testimony under this subchapter. The only relief afforded one who seeks employment is where there is discrimination to encourage or discourage membership in any labor organization. [Section 8(a)(3)].

Consequently I feel that the Board erred in deciding that the petitioner committed an unfair labor practice within the meaning of Section 8(a)(4) of the Act, and I am of the opinion that the Board's decision should be reversed.