UNITED STATES of America,
Appellant,

v.

A. T. BEATY et al., Appellees.

UNITED STATES of America,
Appellant,

v.

R. J. BARCROFT et al., Appellees.

Nos. 14433, 14434.

United States Court of Appeals
Sixth Circuit.

April 6, 1961.

John Doar, Civil Rights Division, Dept. of Justice, Washington, D. C. (Harold R. Tyler, Jr., Asst. Atty. Gen., Harold H. Greene and J. Harold Flannery, Jr., Attys. Dept. of Justice, Washington, D. C., on the brief), for appellant.

Elmore Holmes, III, Philip L. Peeler, C. P. J. Mooney, Lucius E. Burch, Jr. (as amicus curiae), Burch, Porter, Johnson & Brown, Rives Manker, C. C. Gillespie, John S. Montedonico, Daniel D. Canale, Memphis, Tenn., Lawrence W. Morgan, Brownsville, Tenn., for appellees.

Thomas R. Prewitt, Robert E. Joyner, Memphis, Tenn., and Lawrence W. Morgan, L. Kirby Matherne, Brownsville, Tenn., on the brief, for appellees.

Robert W. Sturdivant, Trabue, Minick, Sturdivant & Harbison, Nashville, Tenn., and L. K. Matherne, Brownsville, Tenn., on the brief, for appellee Mrs. Frances Moore Woodson.

Before CECIL, WEICK and O'SULLIVAN, Circuit Judges.

PER CURIAM.

These appeals are from an order of the United States District Court, for the Western District of Tennessee, denying a motion for a preliminary injunction pending the hearing and determination of the merits of the plaintiff's causes of action.

The United States of America, as plaintiff, filed an amended complaint in case number 4065, on the 18th of November, 1960, under section 1971(b) of Title 42 U.S.C.A., known as the Civil Rights Act. Seventy individual and corporate defendants were named. The individuals were all residents of Haywood county, Tennessee, except five. Of these, four owned land in Haywood county. The corporate defendants were banks which were incorporated in Tennessee and transacted business and had their principal places of business in Haywood county.

On December 1, 1960, a virtually identical action, case number 4121, was brought against ten additional defendants. The two actions were consolidated by the trial judge and both are now a part of this appeal.

It was charged in the complaints that the defendants engaged in numerous acts and practices which deprived the negro citizens of Haywood county of their right to be free from threats, intimidation or coercion, and the right to be free from attempted threats, intimidation, or coercion, for the purpose of interfering with their right to vote for candidates for federal offices.

A further charge was made that the defendants conspired among themselves and with others to accomplish the above stated purpose.

It is claimed by the government that part of the threats, intimidation and coercion was in the nature of economic pressure exerted by the defendants, through a well-organized plan and system that would, in part, deny them credit and the right to buy necessities through their usual business relations. In short, as claimed, this pressure would amount to economic strangulation.

It is further claimed that among the economic punitive devices to prevent negroes from registering to vote and to punish them for such registration, was a scheme on the part of the defendants to cause certain negroes and their families to be evicted from the farms where they lived and worked as sharecroppers.

On December 2, 1960, the United States filed a motion for a preliminary injunction restraining the defendants, during the pendency of the action, from engaging in, or performing any and all of the following acts:

"1. Evicting, or threatening to evict, any Negro sharecropper of voting age in Haywood County from property occupied by such Negro unless the defendant shall first have filed a sworn statement setting forth in detail his reasons for the eviction, and the plaintiff has not petitioned this District Court for a hearing on the subject within 20 days following service by mail of the statement on the plaintiff.

"2. Altering, or threatening to alter, the existing tenant farming or sharecropping agreement, including present financial arrangements, if any, with any

Negro tenant of voting age in Haywood County, Tennessee, unless the defendant shall first have filed a sworn statement setting forth in detail his reasons for the change in the existing tenant farming agreement, and the plaintiff has not petitioned this District Court for a hearing on the subject within 20 days following service by mail of the statement upon the plaintiff.

"3. Engaging in any threats, intimidation, or coercion, or attempted threats, intimidation, or coercion, of any nature, whether economic or otherwise, for the purpose of interfering with the right of any other person to become registered to vote in Haywood County, Tennessee, and to vote for candidates for Federal office."

The District Judge set the motion for hearing on December 19th and devoted three days to its hearing and determination. At the conclusion of this hearing, the Judge rendered an oral opinion which he ordered transcribed and filed as findings of fact and conclusions of law.

He found upon this hearing "there is at least reasonable cause to believe there have been attempts by certain of the defendants, some twelve or fourteen for sure, to interfere with this right in Haywood County in various and sundry ways, and there is reason to believe such attempts might be persisted in unless these particular defendants the Court has in mind are restrained."

Thirteen defendants were preliminarily restrained during the pendency of the action, "from engaging in any threats, intimidation or coercion or attempted threats, intimidation or coercion of any nature for the purpose of interfering with the right of any other person to become registered to vote in Haywood County, Tennessee, and to vote for candidates for Federal office."

The District Judge granted no relief to the negro sharecroppers against the landowner-defendants for the reason as stated by him.

"But, Gentlemen, we run into trouble with respect to other relief sought in this litigation, especially with respect to the sharecropping contracts. The Court has been asked to enjoin the eviction of some of the sharecroppers by certain of these defendant landowners and to enjoin the altering of the existing sharecropping contracts which expire the first of the year or shortly thereafter. In effect, it seems to the Court the plaintiff is asking that the Court make new rental contracts for certain of the parties in this litigation. It ought to be evident to all that relief of this type cannot be awarded, especially on application for temporary injunction. The Congress, it is plain to see, did, in passing this Civil Rights Act, intend to protect the voting right but it did not, as the Court reads the Statute, vest the Courts with authority to adjudge contracts and property rights, and this is the main problem inherent in this very broad application by the Government. This litigation, as we are bound to recognize, involves a number of separate controversies between these landlords and tenants, the details and equities concerning which there has been no attempt to fully develop in this hearing, but it should be stated, and it is evident enough that on this phase of the investigation there are serious disputes on questions of fact and law, including constitutional questions. Constitutional questions concerning due process and among others, I believe are present."

As will be noted, the denial of relief was not based upon any finding of fact made by the District Judge, but on the legal proposition that the Court had no right to deal with contracts or property rights of the parties.

On motion of the plaintiff, our Court granted, on December 30, 1960, a preliminary restraining order pending appeal. By this order the landowners were restrained and enjoined "from intimidating, threatening, coercing, or attempting to intimidate, threaten, or coerce any of their Negro sharecropper tenants for

the purpose of interfering with the right of such persons to vote as they may choose or of causing such tenants to vote for or not to vote for any candidate for the office of President, Vice President, presidential elector, Member of the Senate, or Member of the House of Representatives, at any general, special, or primary election held solely or in part for the purpose of selecting or electing any such candidate, or to register for such election or to engage in any act or practice which would deprive the tenants of any such right or privilege, or from evicting or removing said sharecropper tenants or refusing to extend or renew their leases for the purpose of such intimidation or coercion, or to punish them on account of the exercise of their rights to so register or vote at said elections."

The question now before the Court, on this appeal, is whether the District Judge was in error in refusing to grant an injunction, as requested, against the landowner-defendants. It is conceded by the government that the issue thus presented involves the question of abuse of discretion on the part of the trial judge.

■ "It is generally held that the trial court abuses its discretion when it fails or refuses properly to apply the law to conceded or undisputed facts. Union Tool Co. v. Wilson, 259 U.S. 107, 112, 42 S.Ct. 427, 66 L.Ed. 848. Misapplication of the law to the facts is in itself an abuse of discretion. Hanover Star Milling Co. v. Allen & Wheeler Co., 7 Cir., 208 F. 513, 523." Clemons, et al. v. Board of Education of Hillsboro, Ohio, et al., 6 Cir., 228 F.2d 853, 857.

The statute does proscribe threats, intimidation, coercion or attempts to do so for the purpose of interfering with the right of a person to vote for any candidate for federal office. The threats, intimidation or coercion may take on many forms. If sharecropper-tenants in possession of real estate under contracts are threatened, intimidated or coerced by their landlords for the purpose of interfering with their rights of franchise,

certainly the fact that the coercion relates to land or contracts would furnish no excuse or defense to the landowners for violating the law.

■ The evidence amply supports the government's claim that a part of the plan of certain white people in Haywood county to intimidate negro voters, for the purpose of interfering with their rights of registering and voting, was to have them evicted from the land they occupied as tenants.

We must look to subdivision (c) of section 1971 for the relief to which the government is entitled on behalf of the negro tenants.

This subdivision reads as follows: "Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b) of this section, the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order."

■ Does the language of this statute "preventive relief, including an application for a permanent or temporary injunction, restraining order or other order" require the Court to grant the broad relief asked for by the government in paragraphs (1) and (2) of its motion? In our opinion it does not. It is claimed by the government that such an order should be granted on the authority of opinions in National Labor Relations Board cases. In these cases the statute specifically provides for reinstatement of employees. Section 160(c) Title 29 U.S.C.A. Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 187, 61 S.Ct. 845, 849, 85 L.Ed. 1271. Here the court said: "The powers of the Board as well as the restrictions upon it must be drawn from § 10(c), which directs the Board 'to take such affirmative action, including rein-

statement of employees with or without back pay, as will effectuate the policies of this Act.'" See also N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 47, 57 S.Ct. 615, 81 L.Ed. 893.

The government has requested an injunction, in paragraphs (1) and (2), to restrain the eviction or alteration of the existing agreement of any negro of voting age in Haywood county, unless the defendant shall first file a sworn statement of the reasons for the eviction or alteration and the plaintiff has not petitioned the Court for a hearing on the subject within 20 days.

Under this request a defendant would be enjoined without a showing that his action in evicting or alteration of the tenancy was for the purpose of intimidating or coercing the tenant in the exercise of his right of franchise. The request would assume that the defendant did violate the law and place upon him the burden to prove that he did not.

The statute does not specifically delineate the type of remedy which the plaintiff by the first two paragraphs of its motion asked the trial court to employ.

The District Judge has not yet heard and decided the case on its merits. He has made no definitive interpretation of the statute. The question presented is one of first impression.

In our judgment, the District Judge did not abuse his discretion by refusing to grant an injunction which might require him to adjudicate or declare contractual rights, or to specifically enforce them. He may grant preventive relief to enjoin acts or practices in violation of the statute. If any party violates the injunction, it may be enforced by contempt.

We now consider whether the plaintiff was entitled to a restraining order under paragraph three of its motion. There was sufficient evidence of threats, intimidation and coercion to require the trial judge to grant a restraining order permitted by the statute against the landowner-defendants. Such conclusions are also implicit in the court's findings.

The failure to grant a restraining order of the nature hereinafter indicated amounts to a misapplication of the law of subsection (c) of section 1971 to the undisputed facts. To this extent, there was an abuse of discretion.

In our judgment, the government is entitled to a preliminary injunction, enjoining and restraining the landowner-defendants, except those hereinafter excluded, from "engaging in any threats, intimidation or coercion or attempted threats, intimidation or coercion, whether by eviction or threatened eviction or refusal to deal in good faith with them concerning their tenancies, in keeping with the usage and custom heretofore prevailing in Haywood County, Tennessee, of any of their negro sharecropper tenants, for the purpose of interfering with the right of such negro sharecroppers, or other persons, to become registered or to vote in Haywood County, Tennessee, and to vote for candidates for federal office, or for punishment for having previously registered or voted, or engaging in any act or practice which would deprive the tenants of any such right or privilege."

As we stated above the District Judge did not abuse his discretion by refusing to grant an injunction which might require him to adjudicate or declare contracts or to specifically enforce them. So, it should now be understood that the injunction which we here direct is not to be construed as an order which will require the District Judge to declare or to make contracts between defendant-landlords and tenants.

It should, however, be understood to empower and require the District Judge to inquire, by a hearing, at which interested parties are given an opportunity to be heard, into any situation where a defendant-landowner evicts or threatens

to evict a negro tenant or refuses to deal in good faith with said tenant for a continuation of occupancy and tenancy, and said eviction, threatened eviction or refusal to deal in good faith is found to be for the purpose of interfering in any way with the right of such negro tenant to become registered or to vote in Haywood County, Tennessee, and to vote for candidates for federal office, or as punishment for having previously registered or voted, such conduct would constitute a violation of the prohibitions of the order.

The government has expressed its concern that unless every landowner involved is now commanded to retain all tenants on their farms, without a present definition of terms, the matters involved will become moot. We think the government's concern in this regard is without justification. The injunction which we now direct provides adequate preliminary prohibition. Any landowner who, by persistence in a plan to evict a tenant, or by refusal to deal with such tenant, as commanded by the above injunction, is found to have done so for the purpose of preventing such tenant or other negro sharecroppers from registering or voting or of punishing such tenants for having registered or voted, will have thereby exposed himself to punishment for contempt. We have no reason to think that such an injunction will be without efficacy to accomplish the end sought by the statute in question; neither do we think that the District Judge will withhold adequate punishment for any contempt of his injunction.

An examination of the record discloses that there is no evidence which would warrant an injunction against Ben Whitelaw, Mary Golden and Frances Moore Woodson.

The order of the District Court denying appellants' motion for a preliminary injunction is reversed and the case is remanded to the District Court with instructions to grant a preliminary injunction in conformity with the views expressed in this opinion.