**UNITED STATES of America,**
**Appellant,**

v.

**W. Henderson BRUCE et al., Appellees.**

**No. 22028.**

United States Court of Appeals
Fifth Circuit.

Nov. 16, 1965.

Harold H. Greene, Gerald P. Choppin, Attys., Dept. of Justice, Washington, D. C., Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., Louis M. Kauder, Atty., Dept. of Justice, Washington, D. C., John Doar, Acting Asst. Atty. Gen., David Rubin, Bernard J. Haugen, Attys., Dept. of Justice, Washington, D. C., for appellant.

J. E. Wilkinson, Jr., W. McLean Pitts, Selma, Ala., for appellees.

Before TUTTLE, Chief Judge, and RIVES and GEWIN, Circuit Judges.

TUTTLE, Chief Judge:

One of the provisions of the Civil Rights Act of 1957 says that "no person shall intimidate, threaten, coerce or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote * * * " [1]

A further provision of this Act authorizes the Attorney General of the United States to institute, in the name of the United States, a civil action seeking to enjoin a violation of the law in this respect.

The United States, by its complaint, filed in the District Court for the Southern District of Alabama, made certain specific allegations respecting conduct of the named defendants and then asserted, "The defendants have threatened, intimidated, and coerced, and have attempted to threaten, intimidate, and coerce Negro citizens of Wilcox County, Alabama, for the purpose of interfering with the right of Negroes to register and to vote." It further alleged that, unless restrained by order of the court, the defendants would continue to engage in the same or similar acts and by such conduct continue to "intimidate, threaten and coerce Negro citizens for the purpose of preventing, discouraging and interfering with attempts by such Negro citizens to exercise their right to register and vote."

The background allegations upon which the government's conclusionary allegation of threats, intimidation and coercion, were apparently sought to be based, included the following:

(1) Under Alabama law registration is a prerequisite for voting.

(2) In Wilcox County, Alabama, there are approximately 2624 white persons and 6085 Negroes of voting age. No Negro is registered to vote in Wilcox County. Approximately 95% of the white persons of voting age are so registered.

(3) Prior to April 1, 1963, no Negro had applied for registration to vote in Wilcox County for more than 50 years.

(4) Lonnie Brown, a Negro, who was born and had lived his entire life in Wilcox County, except for a period of service in the Army of the United States,

---

1. 42 U.S.C.A. § 1971, provides in part as follows:

"(b) No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not to vote for, any candidate for the office of President, Vice President, presidential elector, Member of the Senate, or Member of the House of Representatives, Delegates or Commissioners from the Territories or possessions, at any general, special, or primary election held solely or in part for the purpose of selecting or electing any such candidate."

began in February, 1963, to urge his Negro neighbors and friends to seek to register and vote. He was active in this regard for several months, and attempted, together with his wife and others, to register; he was rebuffed on the ground that registrars required that any applicant for registration must have his application supported by a witness who was presently registered in Wilcox County (a requirement which the Federal courts have since invalidated).

(5) Brown's activities continued both in Wilcox County and in Selma, Alabama, a neighboring county, and such activities were widely publicized.

(6) Lonnie Brown was an insurance collector, many of whose policyholders resided on property owned or controlled by the defendants.

(7) About May 20, 1963, Lonnie Brown was ordered by James Strother, a white person who owns land in Wilcox County, to stay off land owned by the Strother brothers; on May 27, 1963, while Brown was making an insurance premium collection as a part of his work, defendant George Findley, Jr., a white person who owns land in Wilcox County, warned Brown to stay off of his land; on May 30, 1963, Brown received, by registered mail, an envelope containing four letters signed by the 28 defendants. These letters notified Lonnie Brown to stay off of land owned or controlled by them; as a result of this action by the defendants Lonnie Brown was not able to reach many of the policyholders from whom he had to collect insurance premiums. As a result of this action, Brown had to leave Wilcox County and to work for the company that employed him in another area of the state, away from his home county.

The trial court dismissed this complaint and the United States appeals.

We need not decide whether under the liberal rules of notice pleading of the Federal Rules of Civil Procedure, the government's complaint should have withstood a motion to dismiss for a failure to state a claim upon which relief could be granted if it contained only the conclusionary paragraphs, cf. Santiesteban v. Goodyear Tire and Rubber Co., 5 Cir., (1962), 306 F.2d 9, and Millet v. Godchaux Sugars, Inc., 5 Cir., (1957), 241 F.2d 264, for this complaint alleges much more. It not only alleges that the defendants had threatened, intimidated and coerced the Negro citizens of Wilcox County, but it alleged specific coercive acts directed to the person who was alleged to be the ringleader in encouraging Negroes of Wilcox to register and vote, such acts being of such a nature as actually to put an end to his activities in the field of voter registration, and his removal from his home county. These allegations are more than ample to warrant an inference by the fact finder that the threats thus alleged to have been made were for the prohibited purpose of "interfering with the right of Negroes to register and to vote."

█ The trial court did not assign a reason for dismissing the complaint, so it may be that the court considered that all of the allegations of fact, together with the inferences fairly to be drawn therefrom, would not warrant a proceeding under the statute. The court's action could not be predicated on the fact that these are private parties named as defendants because the statute clearly applies to all persons, whether acting under color of authority or as private parties.

██ It may be that the court considered that since private landowners in Wilcox County have a right to exclude all persons from access to their property if they desire to do so, then the warning to Lonnie Brown could not be translated into illegal conduct, no matter what the motive. This section of the statute was before this Court earlier in the case of United States v. Board of Education of Greene County, Miss., 5 Cir., (1964), 332 F.2d 40. The Court there proceeded on the assumption that conduct that might be perfectly legal, if not colored by the bad intent of interfering with the right to vote, would become illegal upon proof of such illegal intent. Whereas a school board might, under the circumstances present in that case, have

legally failed to renew a teacher's contract for any reason or for no reason at all, if it in fact declined to renew the certificate as a means of coercing or intimidating the teacher as to her right to vote, such conduct would be prohibited under the Act. The rule would be the same in the case of economic sanctions by a landlord towards a tenant or by a landlord towards a person who had theretofore been given free access to enter as an invitee to interview the landlord's tenants. In the case of United States v. Beaty, 6 Cir., (1961), 288 F.2d 653, the Court of Appeals for the Sixth Circuit expressly held Section 1971(b) applicable to economic intimidation in the nature of eviction of sharecroppers by landlords and refusal by landlords to deal with tenants in good faith concerning their tenancies. We fully agree with what was said there:

> "If sharecropper-tenants in possession of real estate under contract are threatened, intimidated or coerced by the landlords for the purpose of interfering with their rights of franchise, certainly the fact that the coercion relates to land or contracts would furnish no excuse or defense to the landowners for violating the law." 288 F.2d 653, 656.

Thus, although the defendants here may have had an almost unrestricted right to invoke the Alabama trespass law to keep all persons from entering upon their property after warning, in the exercise of a desire to exercise exclusive ownership and proprietary interest in their property, they could not legally invoke the right of excluding Lonnie Brown, who had previously been given free access to the property, *as a threat or means of coercion for the purpose of interfering with his right or the right of others whom he represented in exercising their right to register and vote.*

The allegations of this complaint are more than sufficient to satisfy the Federal rules which require only "a short and plain statement of the claim," that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80.

The background allegations make a strong case upon which the trial court could infer the correctness of the conclusionary allegations that these defendants did in fact "intimidate and coerce" the Negro citizens of Wilcox County, through the person of Lonnie Brown, for the purpose of interfering with their right to vote. It was thus error for the trial court to dismiss the complaint.

The judgment is reversed.

Judge GEWIN did not participate in the consideration or decision of this case.