Yvonne C. **EDWARDS**, Petitioner,

v.

Nathan **HABIB**, Defendant and Respondent.

No. 19812.

United States Court of Appeals District of Columbia Circuit.

Dec. 3, 1965.

Danaher, Circuit Judge, dissented.

Mr. Brian Michael Olmstead, Washington, D. C., with whom Mr. Julian Riley Dugas, Washington, D. C., was on the pleadings, for petitioner.

Mr. Herman Miller, Washington, D. C., for respondent.

Before DANAHER, WRIGHT and McGOWAN, Circuit Judges.

### ORDER

PER CURIAM.

This cause came on for hearing on petitioner's motion for stay and respondent's written objection thereto, and was argued by counsel.

It appearing on representation of counsel for petitioner that an appeal from the judgment dated November 23, 1965, in Landlord and Tenant No. 75895–65 of the District of Columbia Court of General Sessions will be filed in the District of Columbia Court of Appeals within the time provided, it is

ORDERED by the court that said judgment of the District of Columbia Court of General Sessions be, and the same is hereby, stayed pending further order of this court;

PROVIDED that the rent for the premises is paid when due, and

PROVIDED FURTHER that the acceptance of such rent payment will not constitute a waiver of any of the respondent's rights with respect to the eviction notice.

J. SKELLY WRIGHT, Circuit Judge, concurs for reasons hereinafter stated.

DANAHER, Circuit Judge, dissents for reasons hereinafter stated.

J. SKELLY WRIGHT, Circuit Judge (concurring):

Petitioner is the defendant in an eviction action brought by her landlord in the District of Columbia Court of General Sessions. She alleged and sought to prove before that court that she was being evicted solely because she had given information to the District of Columbia authorities concerning violations of statutes and regulations governing the sanitary conditions on the premises. On a preliminary motion before that court,

Judge Greene found that "it does appear from that testimony that the defendant has proved prima facie that the notice to quit was issued and possession is being sought in this Court solely because of her complaint to the District housing authorities. The testimony shows that defendant informed these authorities of violations of the housing statutes and regulations with respect to the premises; that the District of Columbia has inspected the premises; that as a result of the inspections certain violations of the law were discovered; and that plaintiff has been given time within which to correct the violations or face prosecution."

When the case came on for trial before a jury and another judge, that judge refused to permit the tenant's defense to go to the jury and directed a verdict for the landlord. He thereupon issued the eviction order which is the subject of the stay proceedings before this court. The landlord's position here, which the General Sessions Court recognized in granting judgment, is that his eviction suit is for non-payment of the rent, and that proof of any intention to evict for other reasons is irrelevant.

It is not seriously questioned that every citizen has the right, if not the duty, of informing his government of a violation of the law, and that a court of equity, on a proper showing, may enjoin any interference with that right. Compare United States v. Beaty, 6 Cir., 288 F.2d 653 (1961).[1] Indeed, an interference with such a right may be punishable under the criminal statutes of the United States. In re Quarles and Butler, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895).[2]

Petitioner in these proceedings sought neither an injunction against nor a criminal prosecution of her landlord. She merely asserted the right in the court below to show that her landlord's purpose in evicting her was, not nonpayment of the rent, but to punish her for advising the proper District of Columbia authorities concerning sanitary conditions on the premises which were in violation of the law. As Judge Greene's excellent opinion makes clear,[3] if this defense can be proved, then a court may not participate with the landlord in the implementation of his illegal purpose. The trial court here should not have denied petitioner the opportunity to make her defense. Moreover it appears, to me at least, that the petitioner has made a strong showing that she is likely to prevail on the merits of her appeal.

---

1. In *Beaty* the court upheld an injunction restraining a landlord from evicting tenants because the tenants sought to exercise the right to vote. See also United States v. Bruce, 5 Cir., 353 F.2d 474 (1965), in which the court held that a landowner may not exercise his right to keep unauthorized persons off his property if the landowner has the "bad intent of interfering with the right to vote."

2. In Quarles, 158 U.S. at pages 535 and 537–538, 15 S.Ct. at pages 960 and 961, the Court said:

   "It is the duty and the right, not only of every peace officer of the United States, but of every citizen, to assist in prosecuting, and in securing the punishment of, any breach of the peace of the United States. * * * It is likewise his right and his duty to communicate to the executive officers any information which he has of the commission of an offense against those laws * * *.

   \*        \*        \*        \*        \*

   "The necessary conclusion is * * * that this right is secured to the citizen by the Constitution of the United States; and that a conspiracy to injure, oppress, threaten, or intimidate him in the free exercise or enjoyment of this right, or because of his having exercised it, is punishable under section 5508 of the Revised Statutes."

3. A landlord may evict for any legal reason or no reason. What he may not do is evict for an illegal purpose such as punishing the tenant for exercising her constitutional right to report law violations on the premises to the proper authorities. See United States v. Beaty, *supra*; United States v. Bruce, *supra* Note 1; John Hancock Mut. Life Ins. Co. v. N. L. R. B., 89 U.S.App.D.C. 261, 191 F.2d 483 (1951). See also N. L. R. B. v. Lamar Creamery Co., 5 Cir., 246 F.2d 8 (1957), in which the court held it to be an unfair labor practice to deny employment to an applicant for a job because he had filed charges against the employer.

As to the other requirements for a stay outlined in Virginia Petroleum Job. Ass'n v. Federal Power Com'n, 104 U.S.App. D.C. 106, 110, 259 F.2d 921, 925 (1958), petitioner has complied with her burden there as well. Certainly being evicted into the street is irreparable damage. Respondent suggests that petitioner can raise the money for a supersedeas from charitable institutions. I think petitioner need not be relegated to charitable institutions as long as a court sits to enforce her rights. Moreover, the issuance of the stay will not substantially harm the respondent since the condition of the stay is the prompt payment of rent. As to where the public interest lies, I suggest that the public interest lies in keeping this family housed, at least until the courts can determine petitioner's rights.

DANAHER, Circuit Judge (dissenting).

This appellant entered into a monthly tenancy agreement with the landlord, the appellee, as of March 24, 1965 and paid one month's rent in advance. The agreement provided that failure to pay the rental in advance would constitute a default, that the agreement was to operate as a notice to quit and that the statutory 30 days' notice to quit was expressly waived. Repeatedly over the following months the appellant-tenant became in default. As of October 11, 1965, neither the appellant nor her counsel appeared in the Landlord-Tenant Branch of the District of Columbia Court of General Sessions, and a default was entered. A motion to reopen was granted, and in due course a 2-day trial was had. A directed verdict was entered in favor of the landlord. This court now without requiring a supersedeas bond would stay execution of the judgment. I believe its order is erroneous.

Without having noted an appeal to the District of Columbia Court of Appeals, the appellant there had sought a stay which was denied. The appellant had asserted her right to retain possession of the premises against the owner because of her alleged entitlement to damages "by way of setoff." Such damages in the Landlord-Tenant Branch were asserted to have been caused by negligent condition of the premises, damages caused by trespass and unlawful entry, damages based on assault, slander and invasion of privacy. She argued here that she had a constitutional right to complain to the authorities that the premises were untenantable, and that the judge at trial had erroneously excluded her proffer of evidence that the landlord had sought her eviction in order to punish her for making complaint about the condition of the premises. Questioned from the bench, her counsel was bound to concede that the landlord may seek eviction of a tenant in default without offering reasons for seeking restitution of his own property. It would seem that the landlord, too, has constitutional rights for the Fifth Amendment provides that he shall not be deprived of his property without due process of law.

I suggest that the trial judge ruled correctly and in accordance with applicable law.

"With respect to the exclusion of testimony as to the reasons for the seeking of possession by plaintiff, such evidence was obviously inadmissible. Under D.C.Code 1940, § 45—910, whenever a lease for any definite term shall expire and the tenant shall fail or refuse to surrender possession of the leased premises, the landlord may sue to recover possession of the premises. The landlord in such circumstances is not required to give reasons for thus seeking possession." Fowel v. Continental Life Ins. Co., 55 A.2d 205, 207 (D.C.Mun.App.1947).[1]

---

1. This court by way of dictum in Rudder v. United States, 96 U.S.App.D.C. 329, 226 F.2d 51 (1955) noted:

"The District of Columbia Code provides that a tenancy from month to month may be terminated on 30 days' notice, and that a landlord may recover possession in the Municipal Court. The Code does not require that a reason for termination be given." Id. at 331, 226 F.2d at 53.

Coincidentally with proceedings in the Landlord-Tenant Branch yet another development must be noticed. This appellant on October 14, 1965 had filed in the District Court, Civil Action 2570–65, Edwards v. Habib. Her sworn complaint for injunction and damages purportedly set forth six causes of action, claiming an interlocutory injunction, a permanent injunction, a temporary restraining order, all designed to preclude her eviction, and $5,000 compensatory damages and $20,000 punitive damages. The predicate for her claims was alleged to be that it is "against public policy, and the intent of the regulations, to permit the defendant to evict plaintiff because of her complaints to the Housing Division." She represented that she is receiving a salary from the Government of $4,000 per year and $40 per month from the Veterans Administration. The District Court denied her prayers for temporary relief, no doubt because of the standards prescribed by this court in Embassy Dairy v. Camalier, 93 U.S.App.D.C. 364, 367, 211 F.2d 41, 43 (1954). There this court reiterated as a test to be applied where a preliminary injunction is sought that the court must inquire into the relative importance of the rights asserted and the acts sought to be enjoined, the irreparable nature of the injury allegedly flowing from denial of preliminary relief, the probability of the ultimate success or failure of the suit, and the balancing of damage and convenience generally. It would seem beyond peradventure that the District Judge could see from the face of the pleadings before him that if she were correct in her claim of denial of constitutional rights she had an adequate remedy at law with a right to substantial damages. That was the very basis of her suit.

Moreover this court, almost week after week, has declined to grant extraordinary relief where a stay is sought. The factors upon which our decisions turn are set forth in Virginia Petroleum Job. Ass'n v. Federal Power Com'n, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958). Among other factors, we stressed that the petitioner must make a strong showing of likelihood of prevailing on the merits; the petitioner must show that without the stay, it will be irreparably injured. We continued:

"The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

If this landlord's property is not fit for residential purposes, it should be condemned. But this tenant entered upon possession of an entire single family house with knowledge of conditions, whatever they were, and obviously still desires to retain possession. Clearly, the appellant, if she is right, has an adequate remedy at law, and the extraordinary powers of this court should not be utilized to deprive the property owner of his property. I suggest that the rules of law and not ad hoc determinations should govern the exercise by this court of the powers entrusted to it.

That a deplorable housing situation in this jurisdiction has been permitted to exist far too long presents a social problem of first magnitude. The remedy does not lie with the courts, however, and I fear that my colleagues' order will yield consequences to be rued.[2] Tens of thou-

---

2. That this appellant has available a forum in which her rights may be determined is clear from her representations in her suit pending in the District Court. Said in other context to be sure, but basically sound are the observations of Mr. Justice Black, dissenting, in Bell v. State of Maryland, 378 U.S. 226, 346, 84 S.Ct. 1814, 1879, 12 L.Ed.2d 822 (1964):

"A great purpose of freedom of speech and press is to provide a forum for settlement of acrimonious disputes peaceably, without resort to intimidation, force, or violence. The experience of ages points to the inexorable fact that people are frequently stirred to violence when property which the law recognizes as theirs is forcibly invaded or oc-

sands of landlord-tenant cases reach the Landlord-Tenant Branch each year. Surely amelioration of conditions should be achieved by the community as a whole, and not through the deprivation of the rights of individual taxpayers.

cupied by others. Trespass laws are born of this experience. They have been, and doubtless still are, important

features of any government dedicated, as this country is, to a rule of law."