Yvonne C. EDWARDS, Appellant,

v.

Nathan HABIB, Appellee.

No. 3957.

District of Columbia Court of Appeals.

Argued Nov. 14, 1966.

Decided March 20, 1967.

Brian Michael Olmstead, Washington, D. C., for appellant.

Herman Miller, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

HOOD, Chief Judge:

This appeal is by a tenant from a judgment in favor of her landlord for possession of a dwelling house which she had rented under a lease by the month (from month to month)[1] in March of 1965. After taking possession the tenant made a number of complaints to the Housing Division of the Department of Licenses and Inspections of the District of Columbia regarding the condition of the premises. The Housing Division had the premises inspected, discovered certain violations of the Housing Code, and directed the landlord to make numerous repairs. In August 1965 the landlord gave the tenant a thirty days' notice to quit.[2] At trial before a jury the tenant's main defense was that the landlord's purpose in giving the notice to quit and suing for possession was to retaliate for the tenant's complaints to the housing authority, and that a retaliatory eviction would violate the tenant's Constitutional rights to freedom of speech, freedom to inform the government of violations of the law and freedom to petition the government for redress of grievances. The trial court ruled that evidence of the landlord's purpose in bringing the action was inadmissible and directed a verdict for the landlord. That ruling is the major issue on this appeal.[3]

---

1. D.C.Code 1961, § 45–821.

2. D.C.Code 1961, § 45–902.

3. A stay of execution was ordered by the United States Court of Appeals for the District of Columbia Circuit pending the outcome of this appeal. Edwards v. Habib, 125 U.S.App.D.C. 49, 366 F.2d 628 (1965).

Our Code provides that a tenancy from month to month may be terminated by either the landlord or tenant by a thirty days' notice expiring on the day of the month from which the tenancy commenced to run.[4] The Code does not require that either the landlord or tenant give any reason for terminating the tenancy. Accordingly, this court has held that a notice to quit by a landlord need assign no reason [5] and that evidence as to the reason for seeking possession is inadmissible.[6] This is in accord with decisions of other courts. In De Wolfe v. McAllister, 229 Mass. 410, 412, 118 N.E. 885, 887 (1918), where a landlord's purpose in terminating a lease was questioned, it was said that it was "unimportant whether she did it because of ill will toward him or because he had failed to pay the rent due; her motives were immaterial." In Wormood v. Alton Bay Camp Meeting Ass'n, 87 N.H. 136, 175 A. 233 (1934), it was said that the motives of a landlord in seeking to terminate a tenancy were immaterial. And in Gabriel v. Borowy, 324 Mass. 231, 234, 85 N.E.2d 435, 438 (1949), it was said: "A landlord could at common law terminate a tenancy at will for any purpose he might desire and the tenant could not question his motives or attack his reasons."

There are three distinct lines of cases wherein a landlord's right to terminate a tenancy has been limited. The first of those is where a governmental body is landlord. In Rudder v. United States, 96 U.S.App. D.C. 329, 331, 226 F.2d 51, 53 (1955), it was said that where the government is landlord it "must not act arbitrarily, for, *unlike private landlords,* it is subject to the requirements of due process of law. Arbitrary action is not due process." (Emphasis supplied.) In Housing Authority of City of Los Angeles v. Cordova, 130 Cal.App.2d Supp. 883, 885, 279 P.2d 215, 216, (1955) cert. denied, 350 U.S. 969, 76 S.Ct. 440, 100 L.Ed. 841 (1956), it was said that a public housing authority "does not possess the same freedom of action as a private landlord, who is at liberty to select his tenants as he pleases, and in the absence of a letting for a prescribed term, may terminate their tenancy either without any reason or for any reason regardless how arbitrary or unreasonable it may be." [7]

The second line of cases deals with emergency rent control legislation restricting the contractual rights of landlords. Such legislation is justified by the exercise of the police power during emergency periods.[8] The impact of such legislation was well stated in Calvin v. Martin, 64 Ohio Law Abst. 265, 268, 111 N.E.2d 786, 788 (Ohio App.1952), where it was said:

At common law, a tenant has no right of occupancy of demised premises except in accordance with the terms of his lease at the expiration of which he may be evicted by due process with or without cause and a landlord can terminate a tenancy at will, for any purpose and his motives are not subject to attack. However, the Housing and Rent Act has modified the common-law rights of the landlord to the extent of prohibiting him from bringing and maintaining eviction proceedings except in accordance with the provisions of the Act.

The third line of cases deals with actions involving the eviction of tenants in apparent retaliation for their registering or voting. See United States v. Beaty, 288 F.2d

---

4. D.C.Code 1961, § 45–902.

5. Warthen v. Lamas, D.C.Mun.App., 43 A. 2d 759 (1945).

6. Fowel v. Continental Life Ins. Co., D.C. Mun.App., 55 A.2d 205 (1947).

7. See also Chicago Housing Authority v. Blackman, 4 Ill.2d 319, 122 N.E.2d 522 (1954).

8. Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165 (1921). Constitutionality of a law authorizing welfare departments to withhold rental payments until a landlord has made a unit conform with housing regulations has been upheld on the basis that such law is an extension of emergency housing legislation. Schaeffer v. Montes, 37 Misc.2d 722, 233 N.Y.S.2d 444 (1962).

653 (6th Cir. 1961), and the somewhat related case of United States v. Bruce, 353 F.2d 474 (5th Cir. 1965). Also somewhat analogous to these cases are cases under the National Labor Relations Act holding that it is an unfair labor practice to deny employment to one who has filed charges against the employer. See John Hancock Mut. L. Ins. Co. v. National Labor Rel. Bd., 89 U.S.App.D.C. 261, 191 F.2d 483 (1951); National Labor Rel. Bd. v. Lamar Creamery Co., 246 F.2d 8 (5th Cir. 1957). Each of these cases concerns specific Congressional legislation. The voting statutes prohibit coercion through physical or economic intimidation in connection with the right to vote, and the labor statutes bar unfair practices connected with an employee's union activity. As with emergency rent control acts, specific legislation has been enacted to protect voting rights and labor employee rights. We feel this distinguishes those cases from the one before us.

One case, not falling within any of the above groupings, is that of Abstract Investment Co. v. Hutchinson, 204 Cal.App.2d 242, 22 Cal.Rptr. 309 (1962), where a tenant was permitted to show as a defense that his eviction was sought solely because of his race. No claim of racial discrimination is made here.

■ The tenant also argues that the landlord's resort to the court to obtain possession of his property under the statute constitutes action "under color of law,"[9] and that her rights to free speech and to petition for redress of grievances would be violated if through court action she were evicted from the premises. We agree with the following statement of the motions judge who set aside the default judgment in this case: "If for constitutional purposes every private right were transformed into governmental action by the mere fact of court enforcement of that right, the distinction between private and governmental action would be obliterated." We reject the contention that the "color of law" cases have application here.

The tenant further contends that she has a Constitutional right to inform the government of law violations and to protection from reprisals by the violator in the form of eviction. She relies strongly on In re Quarles, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895), to support this proposition. There it was held that a citizen has a right to inform the authorities of a violation of internal revenue law, and that those who conspire to injure, oppress, threaten or intimidate such citizen for the exercise of such right, may be punished under a statute forbidding such conspiracy. Here, again, is a case where Congress enacted special legislation to secure certain rights.

■ It is evident that Congress may enact legislation to protect rights and immunities of citizens, and prescribe the penalties, criminal or otherwise, for violation of such rights and immunities. In the present situation, however, Congress gave the landlord the right to terminate the tenancy and placed no restriction on that right. We are not persuaded that the courts should attempt to limit that right and fashion a new form of tenancy. If the landlord is denied recovery in this action, how long may the tenant remain in possession? As long as she is able to convince a jury that the landlord is still seeking a retaliatory eviction? In any subsequent action would the burden be upon the landlord to show a valid reason for seeking possession? Would any tenant by complaining to the housing authority be entitled to have a jury infer that any eviction action was retaliatory in nature? Would such a defense be available when a landlord seeks possession at the expiration of a fixed term? Would the ruling sought be restricted to

9. See Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, 5 L.Ed.2d 492 (1961); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L. Ed. 1161, 3 A.L.R.2d 441 (1948); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330 (1945); United States v. Classic, 313 U. S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).

dwelling property or would it include commercial property?

All of these considerations lead us to the conclusion that if the rights of the landlord are to be restricted and the rights of the tenants are to be enlarged, it should be by legislation spelling out the restrictions and rights, with specific provisions as to the manner of enforcement. If, as some believe, the law relating to landlords and tenants is outdated, it should be brought up-to-date by legislation and not by court edict.[10]

We may add that Congress is aware of the situation. In the last Session of the 89th Congress there were extensive hearings before the Subcommittee on Business and Commerce of the Senate Committee on the District of Columbia on three bills [11] dealing with housing and related problems, including proposed amendments to the landlord and tenant law.[12] None of these bills was reported out of the Committee.

On January 10, 1967, Mr. Bennett of the House of Representatives introduced a bill (H.R. 257, 90th Cong., 1st Sess.) to amend the District of Columbia law relating to landlords and tenants. This bill, thirty-three pages in length, contains sections entitled "Rent Trusteeships," "Retaliatory Evictions and Rent Increases," "Tenant's Covenant to Repair Under Short-Term Lease Void," "Commissioners' Powers to Repair Unsafe Structures Clarified," "Tenant Responsibility," and "Suits Between Landlord and Tenant." Consideration of this and other proposed legislation adds to our conviction that the matter is one for the legislature and not for the courts.

Appellant also contends that the trial judge incorrectly ruled that the terms of her lease were settled on the basis of res judicata. In three separate suits default judgments were entered against appellant for the rental of these same premises. The type of tenancy created and the date it commenced to run were alleged in those proceedings and consequently were properly ruled settled by the trial judge on the basis of res judicata. Bess v. David, D.C.Mun. App., 140 A.2d 316 (1958); David v. Nemerofsky, D.C.Mun.App., 41 A.2d 838 (1945).

Affirmed.

---

10. "It is not for this Court to compete with Congress or attempt to replace it as the Nation's law-making body." Collins v. Hardyman, 341 U.S. 651, 663, 71 S.Ct. 937, 942, 95 L.Ed. 1253 (1951).

11. S. 2331, S. 3549 and S. 3558.

12. The landlord in this action testified during the hearings and specific reference was made to this pending case.