John T. DUNLOP, Secretary of Labor, Appellant,

v.

CARRIAGE CARPET COMPANY, Appellee.

No. 75–2309.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1976.

Decided Jan. 5, 1977.

T. J. Pethia, U. S. Dept. of Labor, Cleveland, Ohio, Donald S. Shire, William J. Kilberg, Carin Ann Clauss, Jacob I. Karro, John K. Light, Jr., U. S. Dept. of Labor, Washington, D.C., for appellant.

Morlee A. Rothchild, Sheldon R. Hartman, Shapiro, Persky, Stone & Marken, Thomas J. Scanlon and Douglas K. Cooper, Cleveland, Ohio, for appellee.

Before PHILLIPS, Chief Judge, and McCREE and LIVELY, Circuit Judges.

PHILLIPS, Chief Judge.

The issue presented by this appeal regarding the coverage of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* appears to be a question of first impression. The District Court held that a "former employee", voluntarily separated from his employer, is not an "employee" protected by the anti-discrimination provisions of § 15(a)(3)[1] of the Act. We disa-

---

1. Section 15 of the Fair Labor Standards Act of 1938 [29 U.S.C. § 215] reads in part:

§ 215. *Prohibited acts; prima facie evidence*
(a) After the expiration of one hundred and

gree with the District Court's narrow reading of the Act and reverse the summary judgment granted to defendant.

## I.

On October 8, 1973, David Bellian applied to the Midland-Ross Corporation in Cleveland, Ohio, for employment as a security guard. Bellian was interviewed by the firm's personnel manager and by the captain of the guards. He was informed that his application was "promising" and was asked by the captain of the guards whether he could start on October 15.

Before October 15, Bellian was called back to Midland-Ross for a second interview. At this second interview a different personnel manager told Bellian that Carriage Carpet Company (Carriage), a former employer of Bellian, had informed Midland-Ross that Bellian, while working for Carriage, had agreed to do some work at straight-time rates, but thereafter had filed a complaint against Carriage with the Department of Labor for not paying overtime rates. Bellian attempted to explain to the Midland-Ross representative that Carriage had misrepresented the facts of the incident and the Labor Department charge. The Midland-Ross personnel manager expressed sympathy with Bellian's predicament, but told Bellian that Midland-Ross would not hire him. The personnel manager suggested that Bellian contact the Department of Labor because the information from Carriage would affect Bellian's chances of getting employment elsewhere.

Bellian contacted the Department of Labor and on August 8, 1974, the Secretary filed the present action against Carriage under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.,* alleging in part:

> twenty days from the date of enactment of this Act [enacted June 25, 1938], it shall be unlawful for any person—
> * * * * * *
> (3) to discharge or in any other manner discriminate against any *employee* because such

Defendant has violated, and is violating, the provisions of section 15(a)(3) of the Act by discriminating against David A. Bellian, a former employee of defendant, by reporting and disclosing, on or about October 11, 1973, to a prospective employer of said employee that the said David A. Bellian had filed a complaint against defendant under or relating to the Act, thereby causing said prospective employer to refuse to hire the said David A. Bellian.

Carriage responded to the Secretary's complaint with a motion to dismiss. Carriage attached to the motion an affidavit of its president, Charles Kovacic, stating that David Bellian had voluntarily left the employ of Carriage Carpet Company on or about May 1, 1973. Carriage argued in support of its motion that on the date of the alleged discrimination—October 11, 1973—Bellian had been voluntarily separated from his employment with Carriage for over five months, and as a mere "former employee" could not claim the protection afforded "employees" by the Fair Labor Standards Act of 1938.

The District Court, treating Carriage's motion and affidavit as a motion for summary judgment, held that the term "employee" as used in the Fair Labor Standards Act "is not broad enough to cover a former employee voluntarily separated from employment." The District Court entered summary judgment for Carriage. The Secretary appeals.

The sole question before this court is whether the District Court correctly determined that a former employee, voluntarily separated from his job, is not within the class of employees protected from employer discrimination by Section 15 of the Fair Labor Standards Act of 1938.

> *employee* has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act [29 USCS §§ 201, 216, 217, 219, 557], or has testified or is about to testify in any such proceeding . . . . (Emphasis added.)

## II.

Section 15 of the 1938 Act, quoted in part in note 1, purports to protect from discharge or discrimination "any employee" who files a complaint or institutes a proceeding under or related to the Fair Labor Standards Act of 1938, as amended. "Employee" is defined as follows in Section 3(e) of the Act [29 U.S.C. § 203(e)(1)]:

§ 203.  DEFINITIONS

As used in this Act—

\* \* \* \* \* \*

(e)(1) . . . the term "employee" means any individual employed by an employer.

Section 203(e)(1) was amended by Congress in 1974, after the acts complained of by appellant, but before the filing of the complaint herein. Act of April 8, 1974, Pub.L. No. 93–259, § 6(a)(2), 88 Stat. 55, 58, *amending* 29 U.S.C. § 203(e)(1). Prior to the 1974 amendment, Section 3(e) [29 U.S.C. § 203(e)] read in pertinent part as follows:

[§ 203] (e) "Employee" *includes* any individual employed by an employer. (emphasis supplied)

In the District Court, appellant argued that the use of the word "includes" in the definition of employee in effect at the time of the events complained of indicated Congressional intent to enact a broad definition which would encompass "former employees" under the facts of this case.

■ The House reports on the 1974 amendments to § 203(e) do not explain why Congress substituted "means" for "includes" in the definition of employee. *See* H.R.Rep. No. 913, 93d Cong., 2d Sess. (1974); and H.R.Conf.Rep. No. 953, 93d Cong., 2d Sess. (1974); both reproduced in 1974 U.S.Code Cong. & Ad.News, at 2811 *et seq.* It is clear from these reports, however, that the 1974 amendments were not intended to restrict or diminish the coverage of the Fair Labor Standards Act of 1974. The introduction to House Conference Report No. 93–953 states that one of the purposes of the 1974 amendments was

" . . . to expand the coverage of the Act, . . ." *See* 1974 U.S.Code Cong. & Ad.News, at 2862.

Under the view we take of the Fair Labor Standards Act of 1938, and in light of the Congressional Reports with respect to the 1974 amendments, we attach no particular significance to the substitution of "means" for "includes" in the definition of employees for purposes of determining whether former employees are within the coverage of the Act.

■ Appellee's principal contention on this appeal is that the term "employee" in § 203 is a "word of art" having a special meaning under the statutory definition quoted above. In declining to read the § 203 definition broadly, the District Court essentially adopted this view by holding that a "former employee," voluntarily separated from his employment, does not fall within a literal reading of § 203 because one voluntarily separated from an employer is not technically "employed by an employer." In view of the broad purposes and clear policies of the Fair Labor Standards Act, and cognizant of the practicalities of enforcement of the Act, we reject the narrow reading urged by appellees and hold that a former employee, though voluntarily separated from his employer, is protected from discrimination by his former employer under 29 U.S.C. § 215(a)(3).

We find no decision dealing with this specific question. Most cases discussing the definition of "employee" under the Fair Labor Standards Act do so in the context of determining whether an employer-employee relationship exists for purposes of applying the substantive wage and hour provisions of the Act. *See, e. g., Dunlop v. Dr. Pepper-Pepsi Cola Bottling Co., etc.,* 529 F.2d 298 (6th Cir. 1976). These cases are persuasive as to the approach which should be taken in interpreting the general definitions contained in the Act.

■ Further, we are guided by decisions defining the boundaries of "employee" as that term is used in the Social Security

Act,[2] the National Labor Relations Act,[3] and in Title VII of the Civil Rights Act.[4] As the Supreme Court noted nearly thirty years ago in *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 723–24, 67 S.Ct. 1473, 1474, 91 L.Ed. 1772 (1947):

> The Fair Labor Standards Act of 1938, enacted June 25, 1938, is a part of the social legislation of the 1930's of the same general character as the National Labor Relations Act of July 5, 1935, 49 Stat. 449, and the Social Security Act of August 14, 1935, 49 Stat. 620. Decisions that define the coverage of the employer-employee relationship under the Labor and Social Security acts are persuasive in the consideration of a similar coverage under the Fair Labor Standards Act. See *Labor Board v. Hearst Publications,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170; *United States v. Silk, ante,* p. 704, decided today.

See *Walling v. American Needlecrafts,* 139 F.2d 60, 63 (6th Cir. 1943). *See also Pettway v. American Cast Iron Pipe Company,* 411 F.2d 998, 1005–06 (5th Cir. 1969), and *Rutherford v. American Bank of Commerce,* 11 EPD ¶ 10,829 (D.N.M., filed Mar. 19, 1976), discussing the usefulness of analogy to the National Labor Relations Act and the Fair Labor Standards Act in Title VII actions.

The Fair Labor Standards Act of 1938 was enacted by Congress to be a broadly remedial and humanitarian statute. The Act was designed to correct "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . ." 29 U.S.C. § 202(a). In *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 706–07, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945), the Supreme Court reviewed the Congressional history of the Act and emphasized the broad scope of Congressional intent:

> The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from sub-standard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. (Footnotes omitted.)

The court further noted:

> The legislative debates indicate that the prime purpose of the legislation was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage. 81 Cong.Rec. 7652, 7672, 7885; 82 Cong.Rec. 1386, 1395, 1491, 1505, 1507; 83 Cong.Rec. 7283, 7298, 9260, 9265. See also H.Rep. No. 1452, 75th Cong., 1st Sess., p. 9; S.Rep. No. 884, 75th Cong., 1st Sess., pp. 3–4. 324 U.S. at 707 n. 18, 65 S.Ct. at 902.

See *Dunlop v. Dr. Pepper-Pepsi Cola Bottling Co., etc.,* 529 F.2d 298, 302 (6th Cir. 1976) (McCree, J., dissenting).

To accomplish the stated goals, Congress built into the Act key definitions of great breadth and generality. Pertinent to the case at hand is the definition of "employee" quoted above. Senator (later Justice) Black stated on the floor of the Senate during the debates of the Fair Labor Standards Act that the term "employee" had been given "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser,* 323 U.S. 360, 363 n. 3, 65 S.Ct. 295, 296, 89 L.Ed. 301 (1945). *See Dr. Pepper-Pepsi Cola, supra,* 529 F.2d at 302–303. Justice Murphy, speaking in *Rosenwasser, supra,* 323 U.S. at 363, 65 S.Ct. at 296, found it was the ". . . Congressional

**2.** 42 U.S.C. § 301 *et seq.*

**3.** 29 U.S.C. § 151 *et seq.*

**4.** 42 U.S.C. § 2000e *et seq.*

intention to include all employees within the scope of the Act unless specifically excluded."

In interpreting provisions of the Fair Labor Standards Act the courts have construed the Act's definitions liberally to effectuate the broad policies and intentions of Congress. In discussing the meaning of the words "employ" and "production" as used in the Act, the Supreme Court stated and explained this attitude of liberal construction in *Tennessee Coal Co. v. Muscoda Local*, 321 U.S. 590, 597, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944):

> But these provisions, like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others. Those are the rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

The following discussion of "employment" and "employee" sums up well the judicial attitude toward interpreting these terms in Fair Labor Standards Act cases:

> The very specificity of the exemptions, however, and the generality of the employment definitions indicates that the terms "employment" and "employee," are to be construed to accomplish the purposes of the legislation. As the federal social security legislation is an attack on recognized evils in our national economy, a constricted interpretation of the phrasing by the courts would not comport with its purpose. Such an interpretation would only make for a continuance, to a considerable degree, of the difficulties for which the remedy was devised and would invite adroit schemes by some employers and employees to avoid the immediate burdens at the expense of the benefits sought by the legislation. These considerations have heretofore guided our construction of the Act. (Footnotes omitted). *United States v. Silk*, 331 U.S. 704,

711–12, 67 S.Ct. 1463, 1467, 91 L.Ed. 1757 (1947).

*See Rutherford, supra*, 331 U.S. at 723–24, 728–29, 67 S.Ct. 1463; *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1310–11 (5th Cir. 1976). *See also Mitchell v. Lublin, McGaughy & Asso.*, 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959) ("[W]ithin the tests of coverage fashioned by Congress, the [Fair Labor Standards] Act has been construed liberally to apply to the furthest reaches consistent with congressional direction."); *Wirtz v. Columbian Mutual Life Insurance Company*, 380 F.2d 903, 908 (6th Cir. 1967), quoting *Wirtz v. Allen Green & Associates, Inc.*, 379 F.2d 198, 200 (6th Cir. 1967) (". . . The Court will look to the legislative purpose of the [Fair Labor Standards] Act and follow that purpose even though a literal reading of the language used would suggest a different conclusion."); *Brennan v. Wilson Building, Inc.*, 478 F.2d 1090, 1094 (5th Cir. 1973) (". . . practical considerations, and not technical conceptions, guide us in determining coverage of the Act, . . .").

■ Furthermore, contrary to appellee's urging in this court, the term "employee" was not intended by Congress, and has not been treated by the courts as a "term of art" when used to describe who is to receive the benefits of social legislation such as the National Labor Relations Act and the Fair Labor Standards Act. In *Labor Board v. Hearst Publications*, 322 U.S. 111, 124, 64 S.Ct. 851, 857, 88 L.Ed. 1170 (1944), the Supreme Court explained the proper approach:

> Whether, given the intended national uniformity, the term "employee" includes such workers as these newsboys must be answered primarily from the history, terms and purposes of the legislation. The word "is not treated by Congress as a word of art having a definite meaning . . . ." Rather "it takes color from its surroundings . . . [in] the statute where it appears," *United States v. American Trucking Assns.*, 310 U.S. 534, 545, 60 S.Ct. 1059, 1065, 84 L.Ed. 1345, and derives meaning from the context of

that statute, which "must be read in the light of the mischief to be corrected and the end to be attained." *South Chicago Coal & Dock Co. v. Bassett,* 309 U.S. 251, 259, 60 S.Ct. 544, 549, 84 L.Ed. 732; cf. *New Negro Alliance v. Sanitary Grocery Co.,* 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012; *Drivers' Union v. Lake Valley Co.,* 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63.

■ Also pertinent is the long-standing rule that strict common law concepts will not be applied to determine the bounds of coverage of terms used in the Fair Labor Standards Act. *Dr. Pepper-Pepsi Cola, supra,* 529 F.2d at 300. The rule was recently stated and the authorities reviewed in *Mednick v. Albert Enterprises, Inc.,* 508 F.2d 297, 299–300 (5th Cir. 1975):

The terms "independent contractor," "employee," and "employer" are not to be construed in their common law senses when used in federal social welfare legislation. *N. L. R. B. v. Hearst,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) (for purposes of the National Labor Relations Act); *United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), and *Bartels v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947) (for purposes of employment taxes on employers under the Social Security Act, as amended); and *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (for purposes of the Fair Labor Standards Act). Rather, their meaning is to be determined in light of the purposes of the legislation in which they were used. "[I]n the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Bartels, supra,* 332 U.S. at 130, 67 S.Ct. at 1550, 91 L.Ed. at 1953.

. . .

■ Section 15(a)(3) of the Fair Labor Standards Act of 1938 was enacted by Congress to remove the risk of employer retaliation against efforts by employees to secure their "just wage deserts under the Act." *Mitchell v. DeMario Jewelry,* 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960).

In *DeMario Jewelry,* the Supreme Court explained the statutory scheme of enforcement of the Act's provisions, indicating the importance of protecting individual workers from fear of retaliation:

For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. This end the prohibition of § 15(a)(3) against discharges and other discriminatory practices was designed to serve. For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions. Cf. *Holden v. Hardy,* 169 U.S. 366, 397, 18 S.Ct. 383, 390, 42 L.Ed. 780. By the proscription of retaliatory acts set forth in § 15(a)(3), and its enforcement in equity by the Secretary pursuant to § 17, Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced. 361 U.S. at 292, 80 S.Ct. at 335.

Reflecting the logic of *DeMario Jewelry* and earlier decisions, the courts have applied the concept of "informer's privilege" in Fair Labor Standards Act cases. This privilege permits the Secretary of Labor to withhold the names of individuals who have made statements or presented grievances under the Act. *See, e. g., Brennan v. Engineered Products, Inc.,* 506 F.2d 299, 302–303 (8th Cir. 1974); *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303 (5th Cir. 1972); *Wirtz v. B.A.C. Steel Products, Inc.,* 312 F.2d 14 (4th Cir. 1962); *Mitchell v. Roma,* 265 F.2d 633 (3rd Cir. 1959). The Fifth Circuit in *Hodgson, supra,* 459 F.2d at 306, extended the protections of the informer's privilege in Fair Labor Standards Act cases to *former* employees. We

find the Fifth Circuit's reasoning to be quite appropriate to the case at hand:

In the district court's view, former employees are removed from the threat of retaliation that might befall an individual presently employed by defendant. The court said:

"The need to shield the identity of *former* employees is not significant, as the possibility of retaliation is remote and speculative. Therefore, plaintiff's ephemeral interest in secrecy on this point must yield to defendant's more substantial interest in preparing its defense."

The possibility of retaliation, however, is far from being "remote and speculative" with respect to former employees for three reasons. First, it is a fact of business life that employers almost invariably require prospective employees to provide the names of their previous employers as references when applying for a job. Defendant's former employees could be severely handicapped in their efforts to obtain new jobs if the defendant should brand them as "informers" when references are sought. Second, there is the possibility that a former employee may be subjected to retaliation by his new employer if that employer finds out that the employee has in the past cooperated with the Secretary. Third, a former employee may find it desirable or necessary to seek reemployment with the defendant. In such a case the former employee would stand the same risk of retaliation as the present employee.

There is no ground for affording any less protection to defendant's former employees than to its present employees. *Wirtz v. B. A. C. Steel Products, Inc.,* 312 F.2d 14 (4th Cir. 1962).

Numerous decisions under the National Labor Relations Act extend the concept of "employee" under that Act to include persons not technically "employed" at the time of the alleged discrimination. For example, the court in *N. L. R. B. v. Whitfield Pickle Company,* 374 F.2d 576, 582–83 (5th Cir.

1967), had this to say about the status of former employees seeking to be rehired:

We hold that where an employer refuses to rehire a former employee because the employee has filed unfair labor practice charges against the employer (no matter whether the original discharge was for reasons valid or invalid under the Act), the employer has violated § 8(a)(4). This court has held that an employer's refusal to *hire* (not rehire) an applicant because the applicant had given testimony in Board proceedings against a former employer violates § 8(a)(4). *N. L. R. B. v. Lamar Creamery Co.,* 5 Cir. 1957, 246 F.2d 8; *John Hancock Mutual Life Ins. Co. v. N. L. R. B.,* 1951, 89 U.S.App.D.C. 261, 191 F.2d 483; see *Iowa Beef Packers, Inc. v. N. L. R. B.,* 8 Cir. 1964, 331 F.2d 176. (Footnote omitted.)

In *John Hancock Mut. Life Ins. Co. v. National Labor Rel. Bd.,* 191 F.2d 483, 485, 89 U.S.App.D.C. 261 (1951), Judge Bazelon described the boundaries of the "employee" concept under the N.L.R.A. in these broad terms:

Section 2(3) of the Act [29 U.S.C. § 152(3)] provides that the term "employee," as used in this statute, "shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise." Thus, in the absence of specific limitation, it includes not only the existing employees of an employer but also, in a generic sense, members of the working class. (Footnotes omitted.)

*See National Labor Relations Bd. v. George D. Auchter Co.,* 209 F.2d 273, 277 (5th Cir. 1954) (". . . the word 'employee' is broad enough to include, and does include, a job applicant who is discriminately denied employment in violation [of the N.L.R.A.]"); *National Labor Relations Bd. v. Syracuse Stamping Co.,* 208 F.2d 77 (2nd Cir. 1953) (discrimination in refusing to rehire an employee because of pending charge filed by her). *Cf. Phelps Dodge Corp. v. Labor Board,* 313 U.S. 177, 191–92, 61 S.Ct. 845, 85 L.Ed. 127 (1941).

In the instant case, the alleged discrimination by Carriage Carpet Company against its former employee, David Bellian, is precisely the sort of "mischief"[5] that § 15(a)(3) of the Fair Labor Standards Act was intended to correct. To read the Act as excluding employees voluntarily separated from their work from the protections of § 15(a)(3) would create an anomaly in the statute not in keeping with the tenor of Congressional intent or judicial interpretation of this Act or of other similar social legislation.

As indicated in *Hodgson, supra,* a former employee, temporarily out of work, is as much in need of the § 15 shield from retaliation as workers still on the job or workers who have been discharged for their protected activities. We cannot read into the broad language and purposes of the Act an exception which would allow an employer to discriminate against and "black list" a former employee as long as the employer can successfully keep the former employee from getting a job and thereby becoming technically "employed by an employer." This would be to reward the very conduct the Act sought to preclude. There is nothing in the language or history of this Act to indicate that Congress intended to penalize dissatisfied employees who voluntarily leave an employer by thereafter denying them the protections of § 15(a)(3). There is every reason to conclude precisely the contrary.

We hold that a former employee, voluntarily separated from his employer, is protected from discrimination by his former employer under § 15(a)(3) of the Fair Labor Standards Act of 1938. To hold otherwise would do violence to the Congressional intent and purposes of the Act and would prejudice the effective enforcement of the Act. The Secretary's complaint in the present case states a cause of action under 29 U.S.C. § 215(a)(3).

The District Court's grant of summary judgment for the defendant Carriage Carpet Company is reversed and the cause remanded to the District Court for further proceedings.

No costs are taxed. Each party will bear its own costs on this appeal.

---

5. *Labor Board v. Hearst, supra,* 322 U.S. at 124, 64 S.Ct. 851.