**Bertha M. RUTHERFORD,**
**Plaintiff-Appellee,**

v.

**AMERICAN BANK OF COMMERCE,**
**Defendant-Appellant.**

**No. 76–1467.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 21, 1977.

Decided Nov. 21, 1977.

Teresa M. Sanchez of the EEOC Law Clinic, Albuquerque, N. M., for plaintiff-appellee.

Peter J. Broullire, III, Albuquerque, N. M. (Coors, Singer & Broullire, Albuquerque, N. M., and William C. Schauer, Alamorgordo, N. M., on the brief), for defendant-appellant.

Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY, Chief Judge.*

McWILLIAMS, Circuit Judge.

This is a civil rights case brought by Bertha Rutherford against her former employer, the American Bank of Commerce, a state banking corporation in Albuquerque, New Mexico, hereinafter referred to as "the Bank." After trial to the court, the trial judge entered judgment in favor of Rutherford against the Bank for violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–3(a), in the amount of $2,450 as damages, and in the additional amount of $1,000 as attorney's fees. The Bank appeals. We affirm.

The statute upon which the present action is predicated, 42 U.S.C. § 2000e–3(a) provides, in relevant part, as follows:

It shall be an unlawful employment practice for an employer to discriminate against *any of his employees or applicants for employment* . . . because he has made a charge . . . under this subchapter. (Emphasis added.)

In the definition section of the subchapter, 42 U.S.C. § 2000e(f), the term "employee" is defined as meaning "an individual employed by an employer . . . ."

Rutherford was first employed by the Bank in 1961. As of August 1971, Rutherford was a loan officer trainee with the Bank. On August 31, 1971, Rutherford was directed by her supervisor to perform certain clerical duties in place of a secretary who had resigned. Believing this to be a demotion, Rutherford became considerably upset, and, after unavailing appeals to both the vice president and president of the Bank, she resigned rather than accept the reassignment.

Rutherford thereafter filed a sex discrimination charge against the Bank with the United States Equal Employment Opportunity Commission, and later brought suit against the Bank in the United States District Court for the District of New Mexico. Trial of this matter resulted in a judgment in favor of the Bank, which judgment was affirmed on appeal by this Court in an unpublished opinion, *Rutherford v. American Bank of Commerce,* No. 74–1313 (10th Cir. filed January 27, 1975). In affirming, we upheld the finding of the trial court that there was no discrimination based on sex, and that the reassignment was motivated by the personnel situation at the Bank.

Shortly after Rutherford resigned her job with the Bank on August 31, 1971, but *before* she . filed the sex discrimination charge, Phil White, a vice president of the Bank, gave Rutherford a highly complimentary letter of recommendation, in which he stated, in part, that "we respect her decision and her reasons for resigning." Subsequently, the following sequence of events occurred: The Bank learned that Rutherford had filed a discrimination charge

---

against it; Rutherford applied for a position with the Citizens Bank in Albuquerque; Gary McPherson, a vice president of Citizens Bank, contacted Phil White to inquire as to Rutherford's employment record with the Bank, at which time White, *inter alia,* volunteered that Rutherford, after terminating her employment with the Bank, had filed a sex discrimination charge against the Bank.

Still later, in connection with an application for employment with Frontier Air Lines, Rutherford contacted Phil White and asked for an up-dated letter of recommendation. White, on this occasion, advised Rutherford that any such letter would set forth the circumstances surrounding her termination of employment and would mention the fact that she had filed a discrimination charge against the Bank. Rutherford then filed a *second* charge of discrimination against the Bank with the EEOC, and later instituted the present proceeding against the Bank.

Rutherford testified that her initial conversations with representatives of the Citizens Bank were highly encouraging, and that Citizens Bank indicated, at least as far as she was concerned, that employment in the near future was a good possibility. It was Rutherford's theory of the case that Citizens, after being advised by the Bank that Rutherford had filed a discrimination charge against it, had a change of heart and only then advised her that there was no chance of employment with it.

The trial court, upon trial to the court, found that the Bank, in advising the Citizens Bank that Rutherford had filed a sex discrimination charge against it, had violated the provisions of 42 U.S.C. § 2000e–3(a). Specifically, the trial court found that in advising the Citizens Bank of the fact that Rutherford had filed a Title VII sex discrimination charge against the Bank, the latter had acted in a purely retaliatory manner, and that such was a form of discrimination prohibited by the applicable statute.

■ That the Bank did act in a spirit of retaliation is in our view amply borne out

by the record. *Before* the filing of the sex discrimination charge by Rutherford, the Bank's vice president had given Rutherford a glowing letter of recommendation in which he stated that Rutherford's reasons for terminating her employment with the Bank were reasonable and understandable. However, *after* Rutherford filed a sex discrimination charge against the Bank, this same vice president conceded that he was "not pleased" at all by such filing, and when called by the Citizens Bank concerning Rutherford's employment record at the Bank, volunteered that Rutherford had filed discrimination charges against the Bank. The finding that in thus advising the Citizens Bank the Bank was itself acting by way of retaliation is supported by the record and cannot be overturned by us on appeal.

■ The trial court also found that as a result of the information imparted by the Bank concerning the filing of a sex discrimination charge, Rutherford lost her employment opportunity at the Citizens Bank. On appeal, counsel asserts that this finding is clearly erroneous. It is true the officials of the Citizens Bank testified that the reason they did not hire Rutherford was unrelated to the fact that Rutherford had filed charges against the Bank. However, this matter is not necessarily resolved by such self-serving statements. Inferences from circumstantial facts may frequently amount to "full proof" of a given theory, and may on occasion even be strong enough to overcome the effect of direct testimony to the contrary. *The Wenona,* 86 U.S. 41, 58, 22 L.Ed. 52 (1873).

■ In our view, the facts and circumstances of the instant case are such as to permit the inference that any chance of Rutherford's obtaining employment at the Citizens Bank was eliminated after the latter learned of Rutherford's discrimination charge against her former employer. Rutherford's testimony was that her initial contacts with the Citizens Bank were highly encouraging and that she was led to believe that her obtaining employment with Citi-

zens Bank was but a matter of time. And this we know for certain, a representative of Citizens Bank was sufficiently interested in Rutherford that he made contact with the Bank's vice president concerning Rutherford. It was not until after this contact that Rutherford was advised that she had no chance of employment at Citizens Bank. Under such circumstances, the trial court's finding is amply supported by the record and on appeal cannot be disturbed by us.

■ Perhaps the main point raised here, as well as in the trial court, is the contention by the Bank that even assuming it acted in a retaliatory manner, and that such is a form of discrimination, and assuming further that because of the Bank's actions Rutherford lost a job at Citizens Bank which she would otherwise have received, there is still no violation by the Bank of 42 U.S.C. § 2000e–3(a), since at the time of the Bank's retaliatory communication with Citizens Bank, Rutherford was no longer an employee of the Bank, having voluntarily terminated her employment several months prior thereto. In thus contending, the Bank stresses that 42 U.S.C. § 2000e–3(a) provides that it is an unlawful employment practice for an employer to discriminate against any of his "employees or applicants for employment. . . . " At the time of the alleged discrimination by the Bank, Rutherford was not an "employee" of the Bank, only a "former employee," and because of that fact the statute does not apply to the present case. The trial court rejected this argument, as do we. The argument is based on a literal reading of the statute which, if followed, would result in a narrow interpretation of the statute not justified by its legislative history. A statute which is remedial in nature should be liberally construed.

The recent case of *Dunlop v. Carriage Carpet Shop,* 548 F.2d 139 (6th Cir. 1977) fortifies us in our conclusion that the trial court was correct in holding that 42 U.S.C. § 2000e–3(a) has application to the present facts. *Dunlop* is a Fair Labor Standards Act case. The relevant portion of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) provides, in part, that it is unlawful to discharge or in any other manner discriminate against "any employee" because such employee has filed a complaint under the Fair Labor Standards Act. In *Dunlop,* one David Bellian, an employee of Carriage Carpet Company, filed a complaint against Carriage with the Department of Labor for not paying overtime rates as required by the Fair Labor Standards Act. Bellian later voluntarily quit his employment with Carriage. Still later, Bellian applied for employment with another company. Upon inquiry, Carriage informed the company to which Bellian had made such job application that Bellian had previously filed a charge against Carriage under the Fair Labor Standards Act. As a result of this information, Bellian's application for employment with the new company was turned down.

The Department of Labor then brought suit against Carriage in the United States District Court for the District of Ohio, alleging that Carriage had violated 29 U.S.C. § 215(a)(3) by discriminating against Bellian, a "former employee," by disclosing to a prospective employer that Bellian had filed a complaint against it under the Fair Labor Standards Act. Carriage filed a motion to dismiss, with a supporting affidavit, on the ground that the communication between Carriage and the prospective employer occurred *after* Bellian had voluntarily terminated his employment with Carriage, and for that reason the statute was inapplicable, inasmuch as the statute proscribed discrimination against any "employee." The trial court granted this motion and entered judgment in favor of Carriage.

On appeal the United States Sixth Circuit Court of Appeals reversed the trial court and disagreed with the trial court's "narrow reading" of the Fair Labor Standards Act. In so doing the Sixth Circuit held that a *former* employee, voluntarily separated from his *former* employer, was protected from discrimination by his *former* employer under 29 U.S.C. § 215, even though the statute did not refer to "former employees" and in fact only proscribed discrimination

**1166**

against employees. We agree with the result reached in *Dunlop* and the reasoning of the Sixth Circuit as expressed therein. We find, by analogy, that *Dunlop* is strong support for the result reached by the trial court in the instant case. *Dunlop,* incidentally, was announced after the trial court's judgment in the instant case.

In *Dunlop,* the Sixth Circuit concluded that former employees, no less than present employees, needed protection from discrimination by employers resentful of the fact that a complaint had been made against them for alleged violations of the Fair Labor Standards Act. In support of such conclusion, the Sixth Circuit quoted, with approval, from *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303 (5th Cir. 1972). This latter case has present pertinency.

In *Charles Martin,* the Secretary of Labor brought suit against an employer in the United States District Court for the District of Texas for violation of the provisions of the Fair Labor Standards Act relating to minimum wage, overtime and record keeping. The Secretary refused to deliver to the defendant employer certain statements which had been taken from employees of the defendant. The trial court ordered the Secretary to turn over to the defendant employer statements of defendant's *former* employees, with the observation that "the need to shield the identity of *former* employees is not significant, as the possibility of retaliation is remote and speculative." When the Secretary refused to comply with the order that it produce the statements taken from persons who were no longer in the employ of the defendant, the trial court dismissed the action.

On appeal, in *Charles Martin,* the United States Fifth Circuit Court of Appeals reversed the trial court and, as concerns the need by former employees to have their identity shielded, commented as follows:

> The possibility of retaliation, however, is far from being "remote and speculative" with respect to former employees for three reasons. First, it is a fact of business life that employers almost invariably require prospective employees to provide the names of their previous employers as references when applying for a job. Defendant's former employees could be severely handicapped in their efforts to obtain new jobs if the defendant should brand them as "informers" when references are sought. Second, there is the possibility that a former employee may be subjected to retaliation by his new employer if that employer finds out that the employee has in the past cooperated with the Secretary. Third, a former employee may find it desirable or necessary to seek reemployment with the defendant. In such a case the former employee would stand the same risk of retaliation as the present employee.
>
> There is no ground for affording any less protection to defendant's former employees than to its present employees. (Citations omitted.) *Id.* at 306.

Judgment affirmed.